**In re Ronald Gene SOUTH, Debtor.**

**OTASCO, INC., Plaintiff,**

**v.**

**UNITED STATES of America and Ronald Gene South, Defendants.**

**In re Terry Lynn KLINGMAN, Debtor.**

**OTASCO, INC., Plaintiff,**

**v.**

**UNITED STATES of America and Terry Lynn Klingman, Defendants.**

**Bankruptcy Nos. BK–80–00317, BK–80–00507.**

**Adversary Nos. 80–0189 to 80–0192.**

United States Bankruptcy Court, W. D. Oklahoma.

Oct. 22, 1980.

John C. Williams, Oklahoma City, Okl., for Otasco, Inc.

S. Paul Richards, Asst. U. S. Atty., Oklahoma City, Okl., for the United States.

OPINION

DAVID KLINE, Bankruptcy Judge.

STATEMENT

Voluntary bankruptcy petitions were filed February 25, 1980 and March 21, 1980

wherein the schedules of debtor Ronald Gene South listed Otasco, Inc., (formerly Oklahoma Tire & Supply) an Oklahoma corporation, as an unsecured creditor for $174.04, and debtor Terry Lynn Klingman listed Otasco as a secured creditor for $386.75 on an air conditioner with a market value of $250.00 and a debt of $333.54 on tires with an estimated market value of $300.00.

Because of the automatic stay provisions of 11 U.S.C. § 362, Otasco (who at the time had collection suits pending in state court) filed complaints which in essence request a lift of the automatic stay and a return of the goods in which Otasco has security interests or alternatively to declare nondischargeable a portion of the listed debts to the extent of the fair market value of unavailable goods if converted by the debtors.[1]

When filing these complaints June 10, 1980 Otasco's counsel was advised by the clerk of the filing fee increased from $15.00 to $60.00 (resulting from Judicial Conference action, reflected by Administrative Office of the United States Courts' memorandum dated April 10, 1980, received April 24, 1980 by Clerk U.S. Bankruptcy Court, W.D. Okl.). Otasco paid such fees, filed additional complaints against the United States,

questioning the $60.00 fee requirements as statutorily and constitutionally offensive.[2]

Otasco's position is set forth in its District Manager's affidavit:

"As a result of the objection and complaint filing fee being raised from $15 to $60, Otasco, Inc. has been unduly prejudiced in that the economic considerations involved in paying the increased filing fee inhibit and prejudice Otasco, ... for the reason that the advancement of $60 filing fee on an indebtedness of from $200 to $500 .... has and will continue to prohibit and prejudice us from making our objections and complaints ... We have no other adequate remedy at law ... and cannot otherwise contact the debtor for the legal prohibition of being in violation of the bankruptcy law ..."

By agreement the cases have been consolidated. A hearing as to these fees was held August 8, 1980. Otasco offered 13 exhibits (including an affidavit) which were admitted without objection. The United States offered no evidence but entered into certain stipulations. It is agreed that all material, relevant bankruptcy court records in these cases, may be evidentially considered.[3] After oral argument, the matter was taken under advisement with briefs invited.

1. B.R. 703 provides that "an adversary proceeding is commenced by filing a complaint with the court" and B.R. 701 identifies an adversary proceeding to include: "... any proceeding instituted by a party before a bankruptcy judge to (1) recover money or property ... (2) determine the validity, priority, or extent of a lien or other interest in property ... (4) object to or revoke a discharge ... (6) obtain relief from a stay as provided in Rule 401 or 601, or (7) determine the dischargeability of a debt." See Title III, Bankruptcy Reform Act, § 405(d) making such rules applicable "to the extent not inconsistent" with the new Code and "until such rules are repealed or superseded".

2. In so doing Otasco by application asked the court to place the filing fees in escrow, trust, or to hold in abeyance until final court determination.

3. See letter of counsel for Otasco dated October 7, 1980, which also includes:

"Finally, it is also proffered the following closing argument; that is, Otasco has a store in the Oklahoma City area that sells second-hand products; these products are returned items

from the regular Otasco stores which sell new goods; this second-hand outlet also sells all repossessed goods sold by the other Otasco stores; Otasco, as was mentioned at the hearing, takes a security agreement and UCC-1 financing statement on *all* goods sold on credit.... the effect of the filing fee requirement has voided the contract and the taking a security agreement and UCC-1 financing statement at the second-hand store (on numerous items generally consisting of used and repossessed refrigerators, air conditioners, lawn mowers and garden tools, tires and batteries–which under Oklahoma law are items allowed to be replevined and repossessed–and other small and various and sundry items). The majority of these second-hand contracts upon which security agreements and UCC-1 financing statements are taken consist of $50.00 to $150.00 or $200.00 items which, in my client's opinion, is effectively invalidating and make void the contract for the reason that the $60.00 filing fee is not recoverable and exceeds any net recovery that may be made by either a money judgment or an order returning the goods to Otasco."

## ISSUES

1) Is the United States as a sovereign immune from this suit?

2) Can Otasco be required to pay these $60.00 filing fees to seek relief from the § 362 automatic stay or alternatively to request a determination of nondischargeability of a portion of its debt?

## FACTS

Otasco, Inc. (Oklahoma Tire and Supply Co.) sells a variety of merchandise to the public through a chain of retail stores, and as a creditor is involved in some 80 to 100 bankruptcy cases annually. The amounts of indebtedness, usually secured, average about $300.00.

Relevant items sold to debtor South included one .38 caliber special pistol and shells for $95.10 and two steel belted Uniroyal tires for $161.34 with an unpaid balance of $174.04. The Klingmans were sold an air conditioner for $464.88 and four Uniroyal tires for $348.36, with fair market values on date of bankruptcy of some $250.00 and $200.00, respectively. By sales agreement terms Otasco retained goods ownership and was entitled upon debtor's default to retake possession of the goods and/or institute legal proceedings for the balance due on the debtor's account. On the dates of these bankruptcy petitions, Otasco had state court cases pending against the debtors.

## LAW

### Sovereign Immunity

■ The United States as sovereign challenges this court's jurisdiction because it has been sued by Otasco absent consent. Pertinently, the government's brief observes: /

"... jurisdiction is lacking over this adversary proceeding. This memorandum addresses the underlying issue, however, since this issue of waiver of fees arises most often by motion in proceedings to which the United States is not a party. In those instances, *the United States often seeks to intervene in order that its interest may be protected. If this adversary proceeding is dismissed for lack of jurisdiction, the United States respectfully requests that it be allowed to express its views if the issue is raised in another manner.*" (emphasis added)

The filing fee issue may well be raisable by motion rather than by complaint. However, there is little magic in a pleading's title; substance determines its character and sufficiency. *Rubenstein v. United States*, 227 F.2d 638 (10th Cir. 1955). Otasco's complaint will be treated as a motion and the United States, as it requested, is granted the right to intervene "and express its views." [4]

### Federal Statutes–Fees

### Judicial Conference Action

Title II of the Bankruptcy Reform Act of 1978 amended 28 U.S.C. § 1930 to read in part:

"(a) Notwithstanding section 1915 of this title, *the parties commencing a case under title 11* shall pay to the clerk of the bankruptcy court the following filing fees:

[4.] Since the plaintiff has challenged the actions of public officials on constitutional grounds, the doctrine of sovereign immunity may be inapplicable. As noted in *Carter v. Seamans*, 411 F.2d 767 (CA 5 1969): "There are, however, two well–recognized instances where suits for specific relief against public officers are not considered to be against the sovereign. In these two instances the sovereign's consent to be sued is not required and the defense of sovereign immunity is unavailable. Thus, the actions of a public officer can be made the basis of a suit for specific relief against the officer as an individual if, but only if, (1) the officer's action is beyond his statutory powers, or (2) if within those powers, the powers themselves or the manner in which they are exercised are constitutionally void."

"(1) For a case commenced under chapter 7 or 13 of title 11, $60.[5]

.    .    .    .    .

"(b) *The Judicial Conference* of the United States *may prescribe additional fees* in cases under title 11 *of the same kind* as the Judicial Conference prescribes under section 1914(b) of this title.

"(e) The clerk of the bankruptcy court may collect only the fees prescribed under this section." (emphases added)

Effective October 1, 1978 28 U.S.C. § 1914 was amended, increasing the district court $15.00 filing fee requirement as follows:

"(a) The clerk of each district court shall require the *parties instituting any civil action, suit* or *proceeding* in such court, whether by *original process, removal* or *otherwise, to pay a filing fee of $60,* except that an application for a writ a habeas corpus the filing fee shall be $5. (emphasis added)

(b) The clerk shall collect from the parties such additional fees only as are prescribed by the Judicial Conference of the United States. . . ."

### Judicial Conference Schedule of Additional Fees

*U. S. District Court.*

On March 7–9, 1979 the Judicial Conference revised the schedule of fees to be charged in the United States District Court, effective October 1, 1979 on nominal fees for indexing, filing of letters rogatory, registering of a judgment, searching of records, certifying documents, reproducing instruments, admission of attorneys to practice, etc. [See written notation following § 1914, 28 U.S.C.A., Cumulative Pocket parts, p. 154].

*U. S. Bankruptcy Court.*

The Conference, pursuant to 28 U.S.C. § 1930(b) prescribed, effective October 1, 1979, the following schedule of fees for the United States Bankruptcy Court:

"... 7. For instituting any civil action, suit or proceeding in a controversy over which the bankruptcy court does not have exclusive jurisdiction, whether by original process, removal or otherwise, $60.00; *for filing a complaint in a controversy over which the court has exclusive jurisdiction, $15.00.*"[6] (emphasis added)

Effective March 6, 1980, transmitted by Administrative Office memorandum dated April 10, 1980 (received April 24, 1980 by Clerk U. S. Bankruptcy Court, W.D.Okl.) the Judicial Conference, under the same statutory authority, increased the filing fee for all complaints to $60.00.

### *Federal Statutes–Bankruptcy Code* Automatic Stay–§ 362

Upon request, the court may terminate, annul, modify or condition the stay [§ 362(d)]. Specifically, the court may grant relief from the stay of an act against the property if the debtor in straight liquidation has no equity in the property. Importantly, if the court does not rule within 30 days from the date of the complaint for relief, the stay is automatically terminated [§ 362(e). Also see Interim Rule 4001].

### Debt Dischargeability–§ 523

A discharge voids all judgments on discharged debts, and enjoins "the commence-

---

**5.** Chapters 7 and 13 deal with straight bankruptcy and adjustment of debts of individual with regular income, respectively. Although not relevant, filing fees for chapter 9–adjustment of debts of a municipality are set at $300, chapter 11 reorganization, $200 and chapter 11 railroad reorganizations, $500. [§ 1930(a)(2)–(4)]

**6.** This Judicial Conference fee schedule attempted to deal with adversary proceedings and distinguish between those civil actions which generally would have been heard by courts of general jurisdiction (state or federal)

exampled by real estate foreclosure actions, antitrust suits, negligence and other tort actions, etc. and those actions peculiar and exclusive to the bankruptcy court, such as the ones herein, that is, requests to lift the automatic stay [§ 362], to determine dischargeability of particular debts [§ 523] or to generally object to discharge [§ 727]. Such Conference action also included a listing of various charges corresponding to the United States District Court as to filing notice of appeal, document certification, etc.

ment or continuation of an action, the employment of process, *or any act,* to collect ... (emphasis added)" [§ 524(a)(2)]. This broadens the protection of the former Act and probably precludes telephone calls, letters, or any personal contact. The provision's apparent intent is to insure that once a debt is discharged, the debtor will not be pressured, in any way, to make payment. The court must grant the individual debtor a discharge unless one of nine other exceptions exist [§ 727(a)]. And creditors holding claims that require complaints to determine dischargeability, including willful–malicious conversion of another's property or interest must file complaints within the time set by the court or such debt is discharged.[7]

### Federal Decisions–Constitutional Law–Fees

### Due Process

*Court access.*

Filing fees and constitutionality have received studied judicial treatment. Read *Boddie v. Connecticut,* 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971), and *United States v. Kras,* 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973). In these cases *indigent* persons claimed that the fee unconstitutionally denied them *court access. Kras* involved the bankruptcy court under the prior Act. *Boddie* dealt with a state divorce court.

*Exclusive forum–right to defend–involuntary action.*

In *Boddie* a six justice majority opinion struck down the state court filing fee as violative of constitutional due process as applied to indigents principally because the would–be plaintiffs *had no other* marriage dissolution *avenue to which to resort* and *were* actually *resorting* to the *judicial process no more voluntarily* "in a realistic sense *than* that of *the defendant called upon to defend his interest in court.* For both groups this process is not only the paramount dispute–settlement technique, but in

fact *the only available one....* Early in our jurisprudence, this court voiced the doctrine that *'[w]herever one is assailed* in his person or his property, *there he may defend.* (citing authorities) ..." [401 U.S. p. 377, 91 S.Ct. p. 785] (emphasis added)

The *Boddie* majority continued:

"Although '[m]any controversies have raged about the cryptic and abstract words of the Due Process Clause,' as Mr. Justice Jackson wrote for the court in *Mullane v. Central Hanover Tr. Co.,* [389 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865] ... 'there can be no doubt that *at a minimum* they require that *deprivation* of life, liberty or property by adjudication *be preceded by* notice and *opportunity* for *hearing appropriate to the nature of the case.'*" (emphases added) [p. 378, 91 S.Ct. p. 786]

*Non–exclusive forum–voluntary action.*

In a five–four decision, the *Kras* court refused to apply *Boddie* to bankruptcy petitioners; the *Kras* majority recalled that *Boddie* was based on the rationale that *resort* to the state courts was *not voluntary,* realistically, the *only* available avenue for marriage dissolution, and commented:

"... Kras' alleged interest in the elimination of his debt burden, and in obtaining his desired new start in life, although important and so recognized by the enactment of the Bankruptcy Act, does not rise to the same constitutional level (as *Boddie* ). If Kras is not discharged in bankruptcy, his position will not be materially altered in any constitutional sense. [409 U.S. p. 445, 93 S.Ct. p. 637]

. . . . .

"Resort to the court ... is not Kras' sole path to relief. Boddie's emphasis on *exclusivity* finds no counterpart in the bankrupt's situation ..." [p. 446] (emphasis added)

---

7. Debts requiring complaints within a limited period of time include false pretenses, fraud, larceny, embezzlement, and willful and malicious acts, § 523(a)(2), (4) and (6). In Oklaho-

ma's Western District, creditors are given notice to file any such complaints within 30 days of the § 341 meeting of creditors. See Interim Rules, Official Form No. 13, par. 3–4.

*Fundamental right.*

In 1966 a three judge court struck down an annual $1.75 Texas poll tax on the premise that Due Process Clause constitutional rights would be of little value if they could be indirectly denied or manipulated out of existence and specifically observed:[8]

> "Since, in general, only those who wish to vote pay the poll tax, the tax as administered by the State is equivalent to a charge or penalty imposed on the exercise of a *fundamental right.* If the tax were increased to a high degree, as it could be if valid, it would result in the destruction of the right to vote. (citing authority)
>
> "It has long been established that a State may not impose a penalty upon those who exercise a right guaranteed by the Constitution. (citing authority)" (emphasis added)

## DISCUSSION

*"The Judicial Conference . . . may prescribe additional fees . . . of the same kind . . . ."*

■ A nonbankruptcy case is commenced in district court by the filing of a complaint and the payment of a $60.00 filing fee. Thereafter, all subsequent pleadings including applications, motions, answers, counter-claims, cross–claims or third–party complaints are considered *part* of the original case and no additional or separate filing fee is required. Specifically, for example, Rule 65(b) of the Federal Rules of Civil Procedure provides for the issuance of a temporary restraining order without notice to an opposing party under certain circumstances. Such Rule 65 additionally reads that "[o]n 2 days' notice to the party who obtained the temporary restraining order without notice or on such shorter notice to that party as the court may prescribe, the adverse party may appear and move its dissolution or modification and in that event the court shall proceed to hear and determine such motion as expeditiously as the ends of justice require." No filing fee is required by either 28 U.S.C. § 1914, or the Judicial Conference's additional fee schedule pursuant thereto, to dissolve or modify such temporary restraining order.

A bankruptcy case is commenced by a debtor (voluntary cases) or creditor (involuntary cases) filing a bankruptcy petition and paying the required $60.00 filing fee. This filing grants the bankruptcy court essentially exclusive jurisdiction over all matters regarding the debtor–creditor relationship. Immediately and automatically virtually all creditors' actions to collect their debts and pursue and protect delinquent security interests or mortgages are stayed.[9]

Where a creditor wishes to have the automatic stay lifted presently effective Bankruptcy Rule 701(6) when considered with Bankruptcy Rule 703 calls for proceeding by complaint and the schedule of fees set by Judicial Conference action dated March 6, 1980 calls for an additional $60.00 fee from each creditor filing such complaint.

Thus, where a party moving to lift a temporary restraining order in a pending district court may do so without payment of a fee, incongruously a bankruptcy court creditor must pay a $60.00 filing fee in seeking to lift the automatic stay.

### Access to Court

The government in its brief urges:

"... Under the Bankruptcy Reform Act of 1978, 28 U.S.C. § 1930(b) now authorizes the Judicial Conference to set fees in addition to those specified by statute. The legislative history demonstrates an intent that fees in bankruptcy keep pace with those in the federal district court: 'In order to mitigate the impact on revenues that such a deletion [of the Referee's Salary and Expense Fund] will have, sections 244 and 246 of title II of the House Amendment raise filing fees in a manner that treats bankruptcy cases

---

**8.** *United States v. State of Texas,* 252 F.Supp. 234, 254 (W.D. Tex. 1966).

**9.** Read § 362. At the same time administrative procedures martial the debtor's non–exempt assets, pointed toward creditor distribution. Dividends, if any, are distributed to the creditors with all remaining amounts owed discharged except those debts which come within specific statutory exceptions [§ 523].

identical with other Federal court cases and comports with dollar value appropriate in 1978 *for gaining access to a Federal court.'* " [10] (emphasis added)

This rationale applies to cases commenced by a petition in bankruptcy and was met when both straight bankruptcy and district court filing fees were set at $60.00, but should not be unrealistically expanded to include *all* creditor action taken within the definition of adversary proceedings set forth in the 1973 Bankruptcy Rules promulgated under the former Act.

By initiating a voluntary chapter 7 bankruptcy case, an individual debtor, conditioned upon making available for creditor dividends all non–exempt assets, if any, affirmatively seeks all rights and remedies provided by substantive bankruptcy law which include the discharging of all nondischargeable debts. Although properly perfected security interest in personalty and valid mortgages and liens on realty are neither affected nor extinguished by substantive Code law, the broad and automatic stay effect bars all foreclosure as well as collection efforts, harassment, etc.

The government suggests that the bankruptcy system should "be paid for by those who use it," quoting language from *Kras*, supra. Significantly the court in *Kras* was speaking of the filing fee required of persons filing voluntary petitions in bankruptcy and in essence was saying that the bankruptcy system should be paid for by those who *choose* to use it. Here, Otasco did not choose to be involved in bankruptcy proceedings. It became involved when and only when the debtor chose to invoke bankruptcy law remedies against Otasco. It is constitutionally suspect to urge that the bankruptcy system should be paid for by those against whom it is used.

### Exclusive forum–right to defend

*Kras*, although definitive of the rights of a petitioning bankruptcy debtor, affords no analogy to a creditor, the object of a voluntary petition. Such creditor is immediately faced with decisions of note. Inaction will result in collateral jeopardy and debt extinction. The automatic stay restricts all remedies, legal and equitable, exclusively to the bankruptcy court. *There is no other forum.* The secured claimant can take no steps to protect his security or mortgage interest absent express bankruptcy court authority and action. Crucially where the creditor chooses to defend and protect such rights he must pay a substantial, unrecoverable filing fee. "Property" of value, has been taken. As exampled in these cases, the $60.00 filing fee approaches economically precluding a creditor from exercising his rights. Court access is clogged if not totally barred. The *substantive* law of bankruptcy identifies, acknowledges and protects such right. Ironically, such right is burdened to the point of burial by a *procedural* barnacle.

*Kras* upheld the filing fee requirement for bankruptcy petitions notwithstanding petitioner indigency. Interestingly, Otasco claims no indigency and disclaims any interest in instituting bankruptcy proceedings.[11] Otasco simply urges that when these bankruptcy petitions were filed, such effectively initiated actions against it and when it as a creditor filed a "complaint" seeking to lift the automatic stay or request a determination of partial nondischargeability of debt, it is merely *defending* an action brought by another. Basic ability *to pay is not in issue* but whether the *fundamental right to defend* a recognized interest can be made subject to any price, or at least one which as in this instance approaches interest confiscation.

Like the right to vote, the *right to defend* may well be a *fundamental* constitutional right which cannot be made subject to a tax which essentially confiscates a defendant's

---

**10.** 124 Cong.Rec. H 11089 (1978), *reprinted in* [1978] U.S.Code Cong. & Admin.News, Vol. 5 at 5787, 6485 (Statement of Rep. Don Edwards). Section 246(a) became 28 U.S.C. § 1930.

**11.** Distinguish but compare *Harewood v. The Sarah Allen Home for the Aged, Inc.,* 4 B.R. 724 (Bkrtcy. E.D. Pa. 1980) wherein the court held that an indigent creditor could proceed by complaint *in forma pauperis.*

property or portion thereof before hearing. Such suggestion offends the most elementary due process principles of American jurisprudence.[12]

## CONCLUSION

The Judicial Conference is empowered to prescribe "additional fees in cases under title 11 *of the same kind* as prescribed under section 1914(b)" of title 28. There is no fee prescribed under section 1914(b) comparable to the $60.00 fee for "filing a complaint" in a pending title 11 bankruptcy case.

Apart from the fee–setting statute's parameters a taxing of Otasco of $60.00 to come in and defend, under the facts herein, deprives Otasco of property without "opportunity for hearing appropriate to the nature of the case." Otasco's position is not that of a party *voluntarily seeking to gain access* to a federal court to institute a civil action, suit or proceeding "by original process, removal or otherwise." Moreover, Otasco has no other forum. *Boddie v. Connecticut,* supra, at 378, 91 S.Ct. at 786.[13]

The clerk of this court, by an accompanying separate order and judgment, is directed to return all complaint fees collected from Otasco and is further instructed in all future cases in this district to collect $60.00 from each party commencing a case under chapter 7 or 13 of title 11 "whether by original process, removal or otherwise" but to collect no fee for any pleading whether entitled complaint, application, motion or otherwise which seeks relief from the automatic stay of Code § 362, to determine dischargeability of particular debts under Code § 523 or to generally object to discharge under Code § 727.

In sum, a creditor in a defending posture in the bankruptcy court should not and cannot be burdened with a $60.00 responsive pleading fee any more than a civil defendant in the district court. Such offends the Code, the Constitution and common sense.

12. Otasco's counsel argued in part: "I'm saying that the sixty dollar filing fee is not warranted.... But, the practicality of the matter is that Otasco, before, the fifteen dollars is quite feasible to chase and try to enforce their three hundred dollar average claim. With sixty it is not. I have asked in my petition that there may be no authority for even the fifteen dollar fee.... I directly agree ... that Otasco is a corporate person who has funds. They are not indigent and they can pay filing fees ..."

13. The judicial philosophy of one bankruptcy trial judge has slight, if any, relevance and thus is being footnoted:

Never has it seemed more difficult for all to make future financial plans. Yet the law has a role to play and it like all other tools must effectively respond or pass from the scene. The recently enacted new Code grants hope at a time when sorely needed. The U. S. Bankruptcy Court may be destined to become the most significant civil trial forum in America insofar as dollars controlled and numbers of persons affected are concerned. The Reform Act comes on the scene at a time when our entire economic system is being challenged. An effective, practical administration of this Code both in *liquidation* and *rehabilitation* may enable the system to bend rather than break. Where asserted economic rights of various parties in interest come into irreconcilable conflict, this court is the *sole forum* where *all* such rights and differences can be adjusted.

*Liquidation* deals with a gathering of assets, an equitable distributing thereof, and the granting to the debtor a "fresh start". For the hopelessly overburdened and disadvantaged, this policy to relieve the honest, debt–ridden debtor could not be more legitimate. *But,* those substantive rights granted to creditors must be sensitively preserved by the procedural mechanisms. For the judicial system (and the bankruptcy court in particular) to retain public support and acceptance, the rights of all parties must be dealt with in an *even–handed* manner. The continuing duty to see that justice is done means *justice* for the debtor, the trustee, the secured claimant and the unsecured claimant,–so that *each* gets that to which he is entitled–no more–no less.