In re Sofia (NMI) LEYBA, Debtor.

FIDELITY FINANCIAL SERVICES, INC., Plaintiff,

v.

Sofia (NMI) LEYBA, Defendant.

Bankruptcy No. 81 M 1080.

United States Bankruptcy Court, D. Colorado.

July 15, 1981.

Thomas F. Farrell, Englewood, Colo., for plaintiff.

Jimmye S. Warren, Asst. U.S. Atty., Denver, Colo., for United States.

## MEMORANDUM OPINION

JOHN P. MOORE, Bankruptcy Judge.

THIS case is before the Court upon a Complaint for Relief from Stay pursuant to 11 U.S.C. § 1302(c)(2), filed by plaintiff Fidelity Financial Services, Inc. (Fidelity). The complaint alleges that Fidelity holds a judgment for the sum of $891.69, against debtor/defendant Sofia Leyba and against Robert F. Leyba, cosigner of the promissory note underlying the judgment. Fidelity seeks relief from the stay of action against a co-debtor imposed by 11 U.S.C. § 1302(a), in order to pursue Robert F. Leyba, who is not at present a debtor in a case under Title 11.

■ The issue before the Court for resolution, however, is not directed to the merits of the complaint. Fidelity has filed a motion for waiver of the $60.00 filing fee required to initiate this adversary proceeding challenging the fee upon two theories. First, it is argued that a charge of $60.00 is economically prejudicial to creditors seeking proportionately small recoveries; and second, Fidelity maintains the Bankruptcy system, in effect, forces creditors into a defensive posture; therefore, it is unconstitutional to tax them before they may assert their rights. In order to expedite hearing on the merits, the docket fee was paid under protest and, by order of Court, deposited into the registry pending the outcome of the motion.

The $60.00 filing fee challenged in this action was established pursuant to 28 U.S.C. § 1930(b), which authorizes the Judicial Conference of the United States to

. . . prescribe additional fees in cases under title 11 of the same kind as the Judicial Conference prescribes under section 1914(b) of this title [28 U.S.C. § 1914(b)].

The schedules of fees effective March 6, 1980, included a directive that the fee for filing a complaint in Bankruptcy Court was to be $60.00.

The basic thrust of the arguments advanced by the Plaintiff is a postulation that when a debtor files a bankruptcy case, creditors are forced to "defend" against the operation of the Bankruptcy Code, if they wish to preserve their claims against the Code's automatic stay provisions. As the postulation is expanded, it is argued that in order to undertake this "defense", a creditor must initiate an adversary proceeding in Bankruptcy Court, pursuant to 701 F.R.B.P. and must pay the $60.00 filing fee. Then, having established the postulation, Plaintiff contends that the fee obstructs the creditor's "fundamental right to defend", and therefore constitutes a "taking of property from the creditor prior to a hearing" which is "violative of due process".

Plaintiff relies almost entirely upon *In re South*, 6 B.R. 645 (Bkrtcy. W.D. Okla., 1980) affirmed U.S.D.C.W.D.Okla., Slip Opinion, April 29, 1981. Both courts in *South* held that it is constitutionally impermissible to charge creditors $60.00 for filing a complaint for relief from stay under § 362. Like Plaintiff, Fidelity, the *South* courts relied on the premise that a debtor's filing of a case under Title 11 forces creditors to defend their rights in one exclusive forum. I find myself unable to accept this premise because I believe it creates a stricture which is not in accord with the unique scope of bankruptcy proceedings.

The filing of a petition under Title 11 has manifold results: it creates an entity known as an "estate", it vests wide jurisdiction over the estate and the debtor in the Bankruptcy Court, and it suspends or alters creditors' rights of action. The petition also provides a new forum for the assertion of rights against the debtor, the estate, or both. However, the filing of a petition does not commence a legal proceeding *against* creditors.[1] Indeed, there is such a panoply of proceedings available to and initiated by creditors that it is an oversimplification to

---

1. To so suggest creates a fiction of convenience so that credence may be given to what follows.

cast creditors in "defensive" postures. They may file a proof of claim to preserve a claim at no cost. If they hold a secured claim, and need not move against the debtor personally to obtain satisfaction, they may file a motion seeking abandonment of the collateral pursuant to 11 U.S.C. § 554(b). If the debtor has filed under Chapter 13, creditors may file an objection to confirmation, pursuant to Local Rule 32, again without cost. Alternatively, they may choose to file a complaint objecting to the debtor's discharge, challenging the dischargeability of a specific debt, or seeking relief from the automatic stay imposed under 11 U.S.C. § 362 or § 1301.

These latter actions occur only in the context of bankruptcy. This does not mean, however, that they are defensive in nature. A creditor's decision that the initiation of an independent lawsuit is the most favorable way to assert the creditor's rights does not mean that the creditor is defending. In my view, such a creditor is the aggressor, and while that creditor may feel impelled by the initiation of a bankruptcy petition to seek the avoidance of bankruptcy jurisdiction, that course is not defensive. Creditors who choose to enforce their claims during the pendency of a case under Title 11 and seek relief from stay are thus still in the position of plaintiffs, because, as was discussed above, resort to the complaint for relief from stay is not the only avenue to protection of rights.[2]

█ Thus, the line of due process decisions that define the rights of those *forced* to defend in the judicial arena do not apply here. Interestingly, indigence is not pled here, nor is an application made for permission to file *forma pauperis*. Rational court filing fees, especially those imposed upon non-indigent plaintiffs, are clearly nonviolative of due process rights. See *Manes v.*

*Goldin*, 400 F.Supp. 23 (E.D.N.Y., 1975) affirmed without opinion, 423 U.S. 1068, 96 S.Ct. 851, 47 L.Ed.2d 80, 1976. See also 16A Am.Jur.2d *Constitutional Law* § 614.

Additionally, it does not appear that the $60.00 filing fee denies Plaintiff equal protection of the laws. The Bankruptcy Court's opinion in *South, supra*, draws an analogy between the Bankruptcy Code's automatic stay and a temporary restraining order issued in a nonbankruptcy case pursuant to the Federal Rules of Civil Procedure, Rule 65(b). As that court points out,

> No filing fee is required by either 28 U.S.C. § 1914, or the Judicial Conference's additional fee schedule pursuant thereto, to dissolve or modify such temporary restraining order. . . .

However,

> where a party moving to lift a temporary restraining order in a pending district court may do so without payment of a fee, incongruously a bankruptcy court creditor must pay a $60.00 filing fee in seeking to lift the automatic stay.

Hence, predicated upon the assumption that the automatic stay is no different from a temporary restraining order, a classification issue is created. Assuming only for the sake of discussion that this assumption is correct, is the resultant classification constitutionally impermissible?

Even though both injunctive remedies are invoked *ex parte*, those persons enjoined by operation of the Bankruptcy Code are taxed, if they wish to dispute the "injunction", while in non-bankruptcy proceedings an injunction under F.R.C.P. 65(b) may be challenged free of charge. Yet, I do not believe this classification is based on "suspect" criteria, such as race, national origin, religion, alienage,[3] and in some cases, gen-

---

**2.** Compare *Boddie v. Connecticut*, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971), where the Court held that the indigents seeking dissolution of marriage *were* in the posture of defendants because resort to the state court was "the only avenue to dissolution of their marriages", and *United States v. Kras*, 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973), which held

that resort to Bankruptcy Court is not a beleaguered debtor's sole path to relief, and so refused to envision him in a defensive posture.

**3.** *City of New Orleans v. Dukes*, 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976); *United States v. Kras, supra*.

der[4] and wealth.[5] Nor can it be said that this classification interferes with a fundamental personal right. For purposes of dealing with equal protection questions, the Supreme Court has characterized a fundamental right as being a "basic constitutional freedom ... which, like free speech, lies at the foundation of a free society." *Buckley v. Valeo*, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976). The Court's analysis differentiates between rights that are "important" and that more limited group of rights "explicitly or implicitly guaranteed by the Constitution." *San Antonio Independent School District v. Rodriguez*, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). To paraphrase Justice Harlan in his dissent in *Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), virtually every statute affects important rights. However,

> The [Supreme] Court today does not "pick out particular human activities, characterize them as 'fundamental,' and give them added protection ...." To the contrary, the Court simply recognizes, as it must, an established constitutional right, and gives to that right no less protection than the Constitution itself demands. ... social importance is not the critical determinant for subjecting state legislation to strict scrutiny. ... Rather, the answer lies in assessing whether there is a right ... explicitly or implicitly guaranteed by the Constitution. *San Antonio v. Rodriguez, supra.*

Rights held to fall within this narrow definition of fundamentality include the right of marriage,[6] rights to vote[7] and to procreate,[8] the First Amendment rights of free speech, press, and assembly,[9] and the right to interstate travel.[10] The position taken by Fidelity requires the conclusion that the right to sue upon an unsecured debt is an equally fundamental right. If that is so, all rights would be so classified. In my judgment, the "classification" involved here impacts solely upon the economic interests of those affected, and those interests do not rise to the constitutionally protected level of a fundamental right.

The cases regarding denial of equal protection under the law have firmly established that

> Unless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage, our decisions presume the constitutionality of the statutory discriminations and require only that the classification challenged be rationally related to a legitimate state interest. *City of New Orleans v. Dukes*, 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976).

Cases specifically dealing with statutes involving economic matters confirm that in order to be upheld, the statute or rule need only meet this test of rational justification. *Hughes v. Alexandria Scrap Corporation*, 426 U.S. 794, 96 S.Ct. 2488, 49 L.Ed.2d 220 (1976); *United States v. Kras*, 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973).[11]

The imposition of a filing fee has been held to be rationally related to the legitimate government objective of offsetting some of the costs of operating the court system. *Ortwein v. Schwab*, 410 U.S. 656, 93 S.Ct. 1172, 35 L.Ed.2d 572 (1973); *Manes v. Goldin, supra; United States v. Kras,*

---

4. *Caban v. Mohammed*, 441 U.S. 380, 99 S.Ct. 1760, 60 L.Ed.2d 297 (1979).

5. *Craig v. Boren*, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976).

6. *Boddie v. Connecticut, supra.*

7. *Kramer v. Union Free School District*, 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969).

8. *Skinner v. Oklahoma*, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942).

9. *Buckley v. Valeo*, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976).

10. *Memorial Hospital v. Maricopa County*, 415 U.S. 250, 94 S.Ct. 1076, 39 L.Ed.2d 306 (1974).

11. See also *City of New Orleans v. Dukes, supra*, which upheld local economic legislation, stating that in the case of laws affecting the economic sphere, "it is only the invidious discrimination, the wholly arbitrary act, which cannot stand consistently with the Fourteenth Amendment". 96 S.Ct. at 2517.

*supra.* Plaintiffs have not challenged the rationality or effectiveness of the filing fee in relation to this legitimate objective. I find that the fee does meet the test of rational justification. Having passed that threshold, it must be upheld.