**In re Ronnie and Sherry PURDY, Debtors.**

**The NATIONAL CITY BANK OF ROME, Plaintiff/Appellant,**

v.

**Ronnie PURDY and Sherry Purdy, Defendants/Appellees,**

**United States of America, Intervenor/Defendant.**

**Civ. A. No. C81–129R.**

United States District Court, N. D. Georgia, Rome Division.

Dec. 10, 1981.

862

Clinton J. Morgan, Rome, Ga., for plaintiff/appellant.

R. Everett Anderson, Rome, Ga., for defendants/appellees.

James E. Baker, U. S. Atty. (N.D.Ga.), Jere W. Morehead, Asst. U. S. Atty., Atlanta, Ga., for intervenor/defendant.

## ORDER

HAROLD L. MURPHY, District Judge.

The National City Bank of Rome (hereinafter "NCB" or appellant) appeals from an order of the Bankruptcy Court, 10 B.R. 901, rejecting its challenge to the constitutionality and applicability of the $60.00 filing fee presently required to commence an adversary proceeding when seeking relief from the automatic stay pursuant to 11 U.S.C. § 362(d).

■ As a preliminary matter, the United States, through the United States Attorney for the Northern District of Georgia, seeks to intervene in this action. The debtors/appellees have no interest in the outcome of this controversy, but a reversal of the Bankruptcy Court order will prevent the United States, through the Clerk of the Bankruptcy Court, from collecting the contested fees in this Division. Therefore, it seems that both sections (a) and (b) of Rule 24, Fed.R.Civ.P., warrant the intervention of the United States in this matter. Furthermore, neither the appellees nor the appellant have responded to the government's motion to intervene; Local Rule 91.2 (N.D. Ga.) states that no response to a motion indicates no opposition thereto. Therefore, the United States' motion to intervene is GRANTED.[1]

In December, 1980, the debtors filed a petition seeking relief in bankruptcy under Chapter 13, 11 U.S.C. § 1301 *et seq.* The filing of the petition pursuant to 11 U.S.C. § 302 stayed any further effort by NCB to collect the debt of the Purdys. § 362(a).

On February 2, 1981, NCB filed its "Complaint for Relief From Stay and To Recover Property", pursuant to § 362(d), and paid the requisite $60.00 filing fee. Subsequently, NCB sought to invalidate the filing fee requirement and receive a refund of that fee. It is from the denial of that motion that NCB appeals.

A. NCB first contends that the statutory authority under which the Judicial Conference of the United States (hereinafter "the Conference") sets fees contains no limit or restriction on the nature or the amount of fees that can be prescribed by the Conference. Thus, it is argued, the statute confers an improper delegation of legislative authority upon the Conference in that there are no standards or purposes set forth to guide the Conference when setting the fees to be collected.

■ The government argues that the Conference acted within a constitutionally permissible grant of authority from Congress, in that the statutory scheme has pronounced an "intelligible principle" to which the Conference must conform. *Hampton and Co. v. United States*, 276 U.S. 394, 409, 48 S.Ct. 348, 352, 72 L.Ed. 624 (1928). That

---

1. As the United States filed a brief urging affirmance of the order below, this Court may proceed to the merits of NCB's appeal.

"intelligible principle" is that those who use the bankruptcy courts should bear a portion of the administrative costs. *United States v. Kras*, 409 U.S. 434, 456, 93 S.Ct. 631, 643, 34 L.Ed.2d 626 (1972).

> Section 362(d) provides, in part, that,
>> [O]n request of a party in interest, and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) . . .
>>> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest.

Such a request is governed procedurally by Rule 701, which requires that a request for relief from the stay as provided by Rules 401 and 601 be only by adversary proceeding. Rules Bankr.Proc. Rule 701(b). The Rules further provide that the adversary proceeding which determines the merits of the request for relief is commenced by the filing of a complaint. Rules Bankr. Proc. Rules 601 and 703.

As to the setting of fees, the Conference was empowered to set additional fees for the bankruptcy referees' salary and expense fund under the old Bankruptcy Act. 11 U.S.C. § 68(c)(2). This fund sought to make the system self-sustaining, paid for by those who use it rather than by tax revenues drawn from the public at large. *United States v. Kras, supra*, at 448, 93 S.Ct. at 639.

With the enactment of the Bankruptcy Reform Act, the fund was abolished and replaced by a new funding mechanism. First, pursuant to 28 U.S.C. § 1914(a), Congress established a filing fee of $60.00 for the institution of any civil action, suit or proceeding (except habeas corpus petitions) in the district courts, whether by original process, removal or otherwise. Section 1914(b) directs the clerk of each district court to collect from the parties "such additional fees only as are prescribed by the Judicial Conference of the United States."

The Reform Act then empowered the Conference to "prescribe additional fees in cases under title 11 of the same kind as the Judicial Conference prescribes under section 1914(b) of this title." 28 U.S.C. § 1930(b).

Pub.L. 95–598, Title II, § 246(a), Nov. 6, 1978, 93 Stat. 2671.

Pursuant to that authority, the Conference at its session on March 7–9, 1979, adopted a schedule of fees to be charged in the bankruptcy courts. Item number 7 required a payment of $60.00 for instituting any civil action, suit, or proceeding in a controversy over which the bankruptcy court does not have exclusive jurisdiction. *See*, Report of the Proceedings of the Judicial Conference of the United States, March 7–9, 1979, at 12. The Conference subsequently amended Item 7 to read,

> For filing a complaint $60.00. If the United States, other than a United States Trustee, acting as trustee, in a case under title 11, is the plaintiff, no fee is required. If a trustee in a case under title 11 is the plaintiff, the fee shall be payable only from the estate and to the extent there is any estate realized.

*See*, Report of the Judicial Conference of the United States, March 5–6, 1980, at 7.

Finally, on June 12, 1980, Berkeley Wright, Chief of the Division of Bankruptcy for the Administrative Office of the United States Courts, issued a memorandum entitled "Amendment of Fee Numbered 7 of the Miscellaneous Fees and Charges", which stated that,

> For filing a complaint, a fee should be collected in the same amount as the filing fee prescribed in 28 U.S.C. § 1914(a) for instituting any civil action other than a writ of habeas corpus. If the United States, other than a United States Trustee acting as a trustee in a case under Title 11, or a debtor is the plaintiff, no fee is required. If a trustee in a case under Title 11 is the plaintiff, the fee shall be payable only from the estate and to the extent there is any estate realized. The exemption granted herein to a debtor is not granted to a debtor in possession.

The net effect of this pronouncement was to require a filing fee of $60.00 for commencing an adversary proceeding. As such, it is no different than the order of the Conference issued in March, 1980. The

government claims that it is a directive from the Conference; appellant asserts that it is being implemented by the Clerk of the Bankruptcy Court. In any event, being nearly identical to the March, 1980, Conference order, this Court can proceed to determine whether the Conference acted within its grant of authority.

First, the Conference has been empowered to conduct a "continuous study of the operation and effect of the general rules of practice and procedure ... in order to promote simplicity in procedure, fairness in administration, the just determination of litigation, and the elimination of expense and delay...." 28 U.S.C. § 331.

Secondly, the old referees' salary and expense fund was eliminated with the passage of the new Reform Act because it was a vestige of "an era when the bankruptcy courts were supposed to be self-supporting." 124 Cong.Rec. S 17425 (daily ed. Oct. 6, 1978) (remarks of Sen. DeConcini); id. at H 11108 (daily ed. Sept. 28, 1978) (remarks of Rep. Edwards), cited in 1 Collier on Bankruptcy ¶ 3.04 (15th ed. 1979), at 3–342. The fund had been operating at a deficit for some time, and its elimination was "part of the goal of bringing the status of bankruptcy courts up to that of all other federal courts." id. Thus, the legislative history makes it clear that the bankruptcy courts are to be financed from general federal revenues as are other courts of the federal judiciary. id., at 3–341.

In order to mitigate the impact on revenues that [the deletion of the fund] will have, [the new financing measures] raise filing fees in a manner that treats bankruptcy cases identical with other federal court cases and comports with dollar values appropriate in 1978 for gaining access to a Federal court.

124 Cong.Rec. H 11108 (daily ed. Sept. 28, 1978) (remarks of Rep. Edwards), cited in 1 Collier on Bankruptcy ¶ 3.04, supra.

Third, the legislative history also indicates that one of the major disabilities of the old Bankruptcy Act was the inferior nature of the bankruptcy courts. The Reform Act sought to establish bankruptcy courts independent of the district courts, rather than subordinate adjuncts of the latter. H.Rep.No. 95–595, 95th Cong., 1st Sess. (1977) 7, reprinted in [1978] U.S.Code Cong. & Ad.News 5963, 5968.

From the foregoing, it is evident that the "intelligible principle" of the reform legislation, of which 28 U.S.C. § 1930(b) is part, is that the bankruptcy courts be independent courts, patterned after the district courts, with the full powers of courts of law, equity and admiralty. id., at 5972–3. The fee-setting authority of the Conference is consistent with and indicative of this purpose, for the Conference is directed to establish fees "of the same kind" prescribed for the district courts. 28 U.S.C. § 1930(b).

The above language is not so broad, when viewed in conjunction with the purposes of the Reform Act and the unique role of the Conference, to constitute an improper delegation of authority by Congress. If Congress lays down policies and establishes standards, it can leave to selected instrumentalities "the making of subordinate rules within prescribed limits and the determination of facts to which the polic[ies] as declared by the legislature ... apply." Panama Refining Co. v. Ryan, 293 U.S. 388, 421, 55 S.Ct. 241, 248, 79 L.Ed. 446 (1934).

Nor is the fee-setting power void for the reason that the bankruptcy system is no longer self-sustaining. "The fact that the fees in question go into the ... general [revenue] fund instead of being earmarked for support of the courts is of no significance, since the courts' support comes from the same general fund." Manes v. Goldin, 400 F.Supp. 23, 31 (E.D.N.Y.1975), affirmed without opinion, 423 U.S. 1068, 96 S.Ct. 851, 47 L.Ed.2d 80 (1976).

The Court likewise finds no merit in NCB's claim that 28 U.S.C. § 1930(b), through § 1914(b), sets no standards for the amount of the fee. NCB states that the March 1979 Conference session raised the fee for filing complaints in bankruptcy courts from $15.00 to $60.00. It is therefore argued that there are no restrictions on the amount of the fee set, such as a ceiling on the dollar amount, "thereby effective bring-

ing about an increasing denial to creditors of their constitutional right to be heard." Brief of Appellant, 2–3.

■ Initially, the Court notes that great deference is given to the interpretation of a statute by those charged with its administration. *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965). Further, the Court need not find that the interpretation be the only reasonable one nor the result that the Court would have reached if it was made the arbiter of its construction. *id.* Be that as it may, it was Congress, when amending § 1914(a), which raised the filing fee in the district courts from $15.00 to $60.00. Pub.L. 95–598, Title II, § 244, 92 Stat. 2671. The Conference was well within its interpretative powers by making the bankruptcy fee uniform with that set by Congress for district courts. We do not deal here with court fees which are "patently exclusionary" because of their "very size." *Bullock v. Carter*, 405 U.S. 134, 143, 92 S.Ct. 849, 856, 31 L.Ed.2d 92 (1972); *Manes v. Goldin, supra.*

In addition, the Court disagrees with NCB's contention that a Chapter 13 creditor is not a "party" within the contemplation of 28 U.S.C. § 1914, and is therefore not subject to the provisions of 28 U.S.C. § 1930. Section 1930(b) authorizes the prescription of "additional fees ... of the same kind" as those prescribed under § 1914(b). That section, rather than directed at from whom the fees are collected, authorizes setting fees "of the same kind" as fees charged in the district court. A litigant instituting a civil action in district court or bankruptcy court must pay a $60.00 filing fee.

■ This interpretation is consonant with the exercise of discretion allowed to an entity charged with administration of a statute. When Congress delegates to an agency the primary responsibility for interpreting a statutory term, the reviewing court may not set aside that interpretation just because it would have interpreted the term in a different manner, but only if the agency exceeded its statutory authority or if the order of the agency is arbitrary, capricious, an abuse of discretion or other-

wise not in accordance with law. *Batterton v. Francis*, 432 U.S. 416, 425–26, 97 S.Ct. 2399, 2405–06, 53 L.Ed.2d 448 (1977). *See, also, American Trucking Associates, Inc. v. I.C.C.*, 659 F.2d 452, 464 n.50 (5th Cir. 1981); *Mesa Farm Company v. United States*, 475 F.2d 1004 (9th Cir. 1973); *American Guaranty Corporation v. United States*, 401 F.2d 1004 (Ct.Cl.1968). In this case, the Court finds that the Conference's actions were consistent with the underlying purposes of the scheme enacted by Congress.

■ B. NCB next argues that a creditor seeking relief from the stay cannot be required to proceed only by complaint. The Court recognizes that 11 U.S.C. § 362(d) states that "on request of a party in interest ... the court shall grant relief from the stay...." However "request" is not a term implying only legal significance, so the Court must look to the legislative history of § 362(d) to discern what Congress intended when it employed that term. *Cf. Kuehner v. Irving Trust Co.*, 299 U.S. 445, 449, 57 S.Ct. 298, 300, 81 L.Ed. 340 (1936) ("The legislative history of this provision ... cannot affect its interpretation, since the language of the act as adopted is clear.")

The Senate Report accompanying its version of the Reform Act indicates that the procedural device invoked to obtain relief from stay is referred to as a "motion," to make it clear that at the expedited hearing under § 362(e), and at hearings on relief from the stay,

> [T]he only issue will be the lack of adequate protection, the debtor's equity in the property, and the necessity of the property to an effective reorganization of the debtor, or the existence of other cause for relief from the stay. This hearing will not be the appropriate time at which to bring in other issues, such as counterclaims against the creditor, which, although relevant to the question of the amount of the debt, concern largely collateral or unrelated matters.

S.Rep. 95–989, 95th Cong., 2nd Sess. 55, *reprinted in* [1978] *U.S.Code Cong. & Ad. News* 5787, 5841.

While the above passage is indicative of the generally narrow scope of the inquiry under a § 362(d) proceeding, it also evinces a view that the relief from stay hearing be an independent proceeding which could be amendable to the trial of other issues, but which nonetheless was limited in its scope by Congress. In this regard, the Court notes that the use of the term "counterclaim" is some indication of congressional awareness of the Rules requiring complaints to commence adversary proceedings; "motions" are usually not responded to by counterclaim. *See, generally, In re Mullins,* 7 B.R. 1, 2 (Bkrtcy., C.D.Cal.1980) (Entire thrust of Part VII of the Bankruptcy Rules is to handle each adversary proceeding as a separate lawsuit); *Matter of Racing Wheels, Inc.,* 5 B.R. 309, 312 (Bkrtcy., M.D. Fla.1980) (A complaint which seeks a relief from the automatic stay is merely a procedural necessity imposed on third parties who must seek relief from the automatic stay for the purpose of proceeding on the merits in a nonbankruptcy forum).

■ Significantly, Congress entrusted the Supreme Court with the promulgation of rules regarding bankruptcy practice and procedure. 28 U.S.C. § 2075. The rules do not take effect until they have been reported to Congress, where, impliedly, they are subject to review. *In re Wall,* 403 F.Supp. 357, 360 (E.D.Ark.1975). For this reason, there is a "strong presumption that the Supreme Court did not abridge or modify any substantive rights" by adopting the Bankruptcy Rules. *id.*

In addition, the rules challenged here were in effect when Congress enacted the Reform Act. Thus, the fact that no adverse action was taken by Congress indicates that it found no transgression of legislative policy. *Sibbach v. Wilson,* 312 U.S. 1, 15–16, 61 S.Ct. 422, 427, 85 L.Ed. 479 (1941); *In re Moralez,* 618 F.2d 76, 78 and n.1 (9th Cir. 1980).

Moreover, the legislative history explaining the amended power of the Supreme Court to promulgate procedural rules for bankruptcy proceedings indicates that Congress purposefully left to the Judiciary the authority to govern the procedure by which a creditor challenges the automatic stay.

The following table lists matters that will be dealt with by the Rules of Bankruptcy Procedure or by local rules of court: . . .

(49) Procedure to gain relief from automatic stay including specification of adequate notice, form of hearing, or means by obtaining ex parte relief;

\* \* \* \* \* \*

(271) Time, *method of initiating,* kind of notice, and form of hearing to gain relief from the automatic stay against codebtors in a chapter 13 case.[2]

H.Rep.No. 95–595, *supra,* at 6252 and 6262. (emphasis supplied).

Such an express delegation of authority over procedural matters in the bankruptcy area presents NCB with a "heavy burden" of showing that the Rules deal with matters of substance rather than procedure. *In re Moralez, supra.* The Rules may not abridge or modify a substantive right, 28 U.S.C. § 2075, but it cannot be assumed that the Supreme Court acted outside the power granted under § 2075, or that Congress allowed rules to become operative which would affect substantive rights. *id.* Nothing that NCB has presented to this Court satisfies that burden.

■ C. NCB's major argument is that the requirement of a $60.00 fee in this case is violative of the constitutional right of due process. Appellant relies almost entirely on *In re South,* 6 B.R. 645 (Bkrtcy., W.D.Okla.1980), *aff'd* 10 B.R. 889 (W.D. Okla.1981). In *South,* the Bankruptcy Court held that a creditor in a defending posture in a bankruptcy proceeding should not and cannot be burdened with a $60.00 responsive pleading fee any more than a civil defendant in the district court. "Such offends the Code, the Constitution and common sense." 6 B.R. at 652.

---

**2.** In its complaint, NCB also sought relief from the stay in order to proceed against a codebtor on the initial sales contract. Complaint for Relief From Stay, Etc., Item No. 8.

NCB's reasoning tracks the *South* decision, arguing that where one is involuntarily called upon to defend one's interest in court, and the court is the only available forum, the right to defend ought not to be made subject to a tax which essentially confiscates property or a portion thereof before a hearing.

The main thrust of NCB's position, therefore, is that the filing of a bankruptcy petition which results in the automatic stay forces a creditor to "defend" his property interest; and to burden this "right to defend" with the imposition of the filing fee unconstitutionally burdens the access of the creditors to the courts.

First, the Court cannot agree with the contention that the automatic stay places a creditor in a "defensive" position. In providing for the automatic stay, Congress was well aware of the circumstances which generally cause a debtor to seek bankruptcy relief. A besieged debtor usually does not file for bankruptcy relief "out of the blue"; rather he seeks the protection of a judicial forum to prevent the impending success of creditor action of foreclosure, collection, or other state court action.

> The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

S.Rep.No.95–989, *supra* at 5840–41.

The legislative history, therefore, shows that the automatic stay is a "defensive" weapon in the limited arsenal of a debtor against the phalanx of creditor efforts. However, the stay does not operate only to the benefit of the debtor.

> The automatic stay also provides creditor protection. Without it, certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors. Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally. A race of diligence by creditors for the debtor's assets prevents that.

*id.*, at 5835.

Other courts similarly have rejected creditors' contentions that, despite the initiation by the creditors of proceedings to release property in which they have an interest from the stay, the creditors nonetheless are "defending" themselves.

> ... [S]uch a creditor is the aggressor, and while that creditor may feel impelled by the initiation of a bankruptcy petition to seek avoidance of bankruptcy jurisdiction, that course is not defensive. Creditors who choose to enforce their claims during the pendency of a case under Title 11 and seek relief from the stay are thus still in the position of plaintiffs.

*In re Leyba*, 12 B.R. 773, 775 (Bkrtcy., D.Colo.1981).

In addition, *In re Bradford*, 14 B.R. 722, 725 (Bkrtcy., N.D.Ill.1981) held that the debtor did not institute an action against the creditor by filing a petition and plan listing the creditor as a secured creditor, even though the debtor proposed a value and payment schedule for the creditor's collateral. "The statutory automatic stay stops [the creditor] from repossessing its collateral or proceeding in state court but it does not put [it] in a defensive posture." *id.*

Furthermore, the operation of § 362(d) itself indicates that the creditor is not placed in a defensive posture. While analogizing the stay to an injunction, the House Report nonetheless recognized that the two were dissimilar in key respects:

> The main difference lies in which party must bring the issue before the court. While in an injunction setting, the party seeking the injunction must prosecute the action, in proceedings for relief from the automatic stay, the enjoined party must move. *The difference does not, however, shift the burden of proof. [Section*

362(g) ] leaves that burden on the party opposing relief from the stay (that is, on the party seeking continuance of the injunction) on the issue of adequate protection.

H.Rep.No.95–595, *supra*, at 6300, (emphasis supplied).

■ Moreover, there is no due process infringement in that the bankruptcy court is the exclusive forum in which a creditor objecting to the automatic stay may seek adequate protection of the property in which he has an interest. This practice does not present an obstacle to adjudication such as the one found unconstitutional in *Boddie v. Connecticut*, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed. 113 (1971). In *Boddie*, the Supreme Court found that due process was violated when indigents were completely restrained from "*the only avenue* to dissolution of their marriages" through the required payment of filing fees. 401 U.S. at 376, 91 S.Ct. at 785. (emphasis supplied).

On the other hand, in the bankruptcy context, creditors have other "avenues", free of charge, in which to assert and protect their rights in the property. They may file a proof of claim at no cost. Secured creditors may seek abandonment of the collateral pursuant to 11 U.S.C. § 554(b).[3] In a chapter 13 case, creditors may object to confirmation of the plan. 11 U.S.C. § 1324. A plan confirmed over creditors' objections must protect the creditors' interests through certain "cramdown" provisions. 11 U.S.C. § 1325(a)(5)(B).

NCB maintains that, assuming that these other avenues of relief exist, they are in effect unrealistic alternatives, or that their existence does not control the legal issue before the Court, that is, access to the courts. The Court notes that the filing of a complaint and the payment of the fee also may be an ineffective remedy if the Bankruptcy Court denies relief from the stay. However, the effectiveness or ineffectiveness of the remedy in any given case does not mean that alternative courses of action do not exist.

Moreover, NCB does not allege, nor, the Court notes, could it allege, its indigency, a factor which exists in all the "access to courts" cases. E.g., *Boddie v. Connecticut*, *supra*; *Griffen v. Illinois*, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956). *See also*, *Lee v. Habib*, 424 F.2d 891, 901 (D.C.Cir. 1970) (The right of all to have free access to the courts is basic to our democratic system. It too cannot be conditioned on the payment of a fee where such a condition precludes the exercise of the right).

Thus, NCB's contention must be viewed in light of its ability to pay the cost of accomplishing its own business of extending credit. As the *Boddie* Court held, "[D]ue process does prohibit a State from denying, *solely because of inability to pay*, access to its courts to individuals . . . ." 401 U.S. at 376, 91 S.Ct. at 785. The Supreme Court, however, has never held that access for all individuals to the courts is a right that is, in all instances, guaranteed by due process so that its exercise may not be placed beyond the reach of any individual. *id.* at 382, 91 S.Ct. at 788. *Boddie* is thus distinguishable from the instant matter, for there, access to the court to dissolve their marriages was "the exclusive precondition to the adjustment of a fundamental human relationship." 401 U.S. at 383, 91 S.Ct. at 788. NCB's position, on the other hand is appropriately characterized as that of the petitioner's in *Carroll v. United States*, 320 F.Supp. 581 (S.D.Tex.1970), where it was held,

Having raised himself above the penury, petitioner must now confront the initial dilemma which faces most other potential civil litigants: is the merit of the claim worth the cost of pursuing it?

320 F.Supp. at 582.

In addition, in light of NCB's arguments concerning deprivations of right guaranteed by due process of law, the Court believes that it is necessary to realize exactly what the automatic stay in particular, and the

---

**3.** NCB also contends that it is the practice in the Bankruptcy Court to continue the stay even after the collateral is abandoned, unless the $60.00 fee is paid. Although the legal status of such a practice may be of suspect validity, that issue is not now before the Court.

bankruptcy system in general, seek to accomplish. The effect of both on commercial relationships must be kept in mind when analyzing them in a constitutional context. First, the stay is finely tuned. It was designed to cure the defects that existed in the old Act. In this regard, it "does not affect the creditor's substantive rights in any way. It operates only as a procedural delay. The creditor remains entitled to full satisfaction." H.Rep.No.95–595, *supra* at 6084.

Likewise, the Code is a procedural mechanism for debtor relief and creditor satisfaction. As the Supreme Court held in *Kuehner v. Irving Trust Co.*, 299 U.S. 445, 452, 57 S.Ct. 298, 301, 81 L.Ed. 340 (1936), "[T]he Fifth Amendment ... does not prohibit bankruptcy legislation affecting the creditor's remedy for its enforcement against the debtor's assets...." This system, like the stay, only forecloses NCB's ability to enforce its contractual rights against the debtors at this time. Such does not rise to the level of a constitutional deprivation.

One final comment is required. Appellant's reliance on *Silver v. Cormier*, 529 F.2d 161 (10th Cir. 1976) clearly misses the mark, for it concerns an entirely different situation than the one at bar. While it is true that the Tenth Circuit found unburdened access to courts part and parcel of our democratic system, the case itself involved a public official's threats to a citizen to withhold monies due and owing should legal proceedings on an independent matter be instituted. Therefore, such a case has no persuasive effect on the issue presented here.

D. NCB's final argument is that the required filing fee denies equal protection of the laws. It is argued that the Administrative Office's directive exempting debtors from paying the fee, as well as the difference in treatment between one seeking relief from the automatic stay and one contesting a temporary restraining order or other injunction, creates a classification issue.

■ The traditional inquiry of the equal protection cases is whether the legislative classification is rationally based or free from invidious discrimination; if this is answered in the affirmative, the constitutional guarantee has been satisfied.

Such is the inquiry when confronted with a classification arising under the bankruptcy laws. As was held in *United States v. Kras*, 409 U.S. 434, 446, 93 S.Ct. 631, 638, 34 L.Ed.2d 626 (1973),

> Bankruptcy legislation is in the area of economics and social welfare. This being so, the applicable standard, in measuring the propriety of Congress' classification, is that of rational relationship. (citations omitted).

■ Therefore, the strict scrutiny standard utilized in cases where the classification is based on suspect criteria such as race, national origin, religion, alienage, and sometimes gender and wealth, is not applicable here. *See, In re Leyba, supra,* at 775–76.

The classification as it creates disparate treatment of debtors and creditors is rational. For the very reason that they are in bankruptcy courts, debtors may not be able to incur additional expenses above that required when filing the petition. Since it is permissible to require those who use the courts to contribute to their financial support, *Ortwein v. Schwab*, 410 U.S. 656, 93 S.Ct. 1172, 35 L.Ed.2d 572 (1973), the Court finds no constitutional deprivation of constitutional rights in this regard.

■ Moreover, it does not appear that NCB's "right" to seek relief from the stay is of such "fundamental" nature that the disparate treatment accorded it, when compared with those contesting a temporary restraining order, deserves strict scrutiny from the courts. Such fundamental rights that have been recognized are those "personal"[4] rights such as marriage[5], procrea-

---

4. *City of New Orleans v. Dukes*, 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976).

5. *Boddie v. Connecticut, supra.*

tion[6], voting[7], the First Amendment rights of free speech, press, and assembly[8], and interstate travel[9]. "Fundamental" rights are those which must be found to be explicitly or implicitly guaranteed by the Constitution. *San Antonio Independent School District v. Rodriquez*, 411 U.S. 1, 33–34, 93 S.Ct. 1278, 1296–97, 36 L.Ed.2d 16 (1973). In comparison to those rights deemed "fundamental" underpinnings of our society, the Court believes that NCB's right to proceed against the debtors regardless of the pendency of bankruptcy proceedings, which is all that relief from the stay provides, is not a right guaranteed by the Constitution.

ACCORDINGLY, the order of the Bankruptcy Court is AFFIRMED.

---

**6.** *Skinner v. Oklahoma*, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942); *See, also, Griswold v. Connecticut*, 379 U.S. 926, 85 S.Ct. 328, 13 L.Ed.2d 339 (1965).

**7.** *Kramer v. Union Free School District*, 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969).

**8.** *Buckley v. Valeo*, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976).

**9.** *Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); *Memorial Hospital v. Maricopa County*, 415 U.S. 250, 94 S.Ct. 1076, 39 L.Ed.2d 306 (1974).