In re Alfred Percell HOLMES, Debtor.

**POLICE FEDERAL CREDIT UNION, Plaintiff,**

v.

**Alfred Percell HOLMES, Defendant.**

Bankruptcy No. 80–00448.
Adv. No. 81–0014.

United States Bankruptcy Court,
District of Columbia.

March 11, 1981.

---

Robert E. Deso, Bennett, Deso & Greenbery, Washington, D.C., for plaintiff Police Federal Credit Union.

F. Anthony McCarthy, Bowie, Md., for debtor.

## MEMORANDUM OPINION

(Complaint to Modify Stay—11 U.S.C. § 1301)

ROGER M. WHELAN, Bankruptcy Judge.

The complaint filed by the plaintiff, Police Federal Credit Union, seeks relief from the provisions of the co-debtor stay, 11 U.S.C. § 1301(c)(2).[1] This complaint raises the issue as to the extent and under what circumstances should relief from the stay be granted in the context of a Chapter 13 case where the plan of confirmation provides for payment to unsecured creditors in the amount of 21% over an extended 4-year period of time.

The facts presented in this adversary proceeding are basically uncontroverted and establish the following:

The debtor, Alfred Percell Holmes, filed a petition under Chapter 13 of the Bankruptcy Code on October 10, 1980. One of his general unsecured debts was an obligation to the Metropolitan Police Department Federal Credit Union in the sum of $3,687.97. The obligation is unsecured, albeit, a debt that has been co-signed by two fellow employees of the debtor police officer, Linda V. Rowe and Robert L. Smoat. An order of confirmation was entered by this court·on January 19, 1981. Pursuant to the provisions of the debtor's plan and the order of confirmation, the general unsecured creditors, over an extended 4-year period of time, will receive approximately 21% of their indebtedness. The Metropolitan Police Department Federal Credit Union was properly classified as an unsecured creditor, and is obviously subject to the payment provisions of the aforesaid order of confirmation. The Credit Union, as an unsecured creditor, will be paid only a portion of its debt; namely, 21% over four years.

An answer was filed to the plaintiff's complaint in which the debtor opposes relief from the stay because he does not wish the Credit Union to take action against his co-workers, the co-makers on the note. Furthermore, it appears, from the allegations set forth in the answer, that the debtor intends to "reaffirm his debt to the Credit Union at the end of the period in which his assets are controlled by the Trustee" (Paragraph 4 of Response to Show Cause Opposition to Request for Waiver of Automatic Stay).

The purpose of the automatic stay bars creditors from taking any post-petition steps to collect a claim against a co-debtor. The legislative history indicates that the purpose of the stay is solely for the benefit of the principal debtor and the stay itself "... operates to delay collection efforts against individuals close to the debtor who

---

1. Subsection (c) of Section 1301 specifically requires the Court to grant relief from the automatic co-debtor stay where:

"(2) The plan does not propose payment of the debt."

have obligated themselves on debts incurred by and for the benefit of the chapter 13 debtor."[2]  Under the facts presented, the creditor in this case will receive, assuming successful consummation of the Chapter 13 plan, 21% of its debt.  To require the creditor to await a "reaffirmation" at the conclusion of the Chapter 13 plan, operates directly to prejudice the creditor's rights in clear contravention of the provisions of Section 1301.  Based upon the debtor's filed answer and upon the argument of debtor's counsel presented at trial, it appears the debtor proposes to reaffirm the debt of the Credit Union at the conclusion of the Chapter 13.  This was to be done so the creditor would be paid in full.  Accordingly, the debtor contends that no action should be taken against the co-makers on the note as long as the Chapter 13 plan is pending.  However, the facts of this case indicate that the interests of the creditor would be irreparably harmed if they were to wait four years for a possible reaffirmation that would begin to pay the other 79% of the debt due.

When a person co-signs a debt of another, they are obligating themselves to pay the debt should the primary debtor default on the payments.  To allow a co-maker on a note to absolve themselves from payment on that note for four years would in effect nullify the purpose of having a co-maker on a note.  While under 11 U.S.C. § 524(c)(1) a reaffirmation on a dischargeable debt can be made by the debtor in a Chapter 13 case, if it is made prior to the granting of the discharge, (and in Chapter 13 this would mean prior to completion of all payments under the plan) the creditor in this case would essentially be put in limbo for four years as to the collection of the 79% due on the loan.

While the debtor at this time in good faith has stated he will reaffirm the debt on the note at the end of the plan, his circumstances could conceivably change within that time, and he might find it impossible or imprudent to reaffirm this debt.  He also would have no legal obligation to reaffirm, and this would have put the creditor in a precarious situation.  Under 11 U.S.C. § 1328, once the Chapter 13 plan payments are completed, the debt is discharged against the debtor in full.

The Court cannot assure the creditor that the co-makers on the note will even be around in four years to make good on the note should the debtor not reaffirm.  Even if the debtor does reaffirm at the end of the four-year period, this would have the effect of an extension of the plan beyond the statutory five-year period in which the debtor's plan must be completed.  Based on these facts, the Court finds that the creditor would be irreparably harmed by the continuation of the stay, and thus will allow the creditor relief from the stay pursuant to 11 U.S.C. § 1301(c)(2) & (3).

The legislative history of the Bankruptcy Code clearly supports the position of the creditor in this case;  namely:

"Under the terms of the agreement with the codebtor who is not in bankruptcy, the creditor has a right to collect all payments to the extent they are not made by the debtor at the time they are due.  To the extent to which a chapter 13 plan does not propose to pay a creditor his claims, the creditor may obtain relief from the court from the automatic stay and collect such claims from the co-debtor.  Conversely a codebtor obtains the benefit of any payments made to the creditor under the plan.  If a debtor defaults on scheduled payments under the plan, then the codebtor would be liable for the remaining deficiency;  otherwise, payments not made under the plan may never be made by the codebtor.  The obligation of the codebtor to make the creditor whole at the time payments are due remains."[3]

**2.**  5 Collier on Bankruptcy § 1301.01[1] at p. 1301–2 (15th ed. 1980).  *See also* H.R.Rep.No. 595, 95th Cong., 1st Sess. 121–122, 426 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787.

**3.**  H.R.Rep.No. 95–989, 95th Cong., 1st Sess. 138 (1977), U.S.Code Cong. & Admin.News 1978, p. 5924.

To continue the stay against this creditor, with the anticipatory hope that the debtor will "reaffirm" his debt at the conclusion of the plan, is clearly to prejudice the creditor's rights against co-debtors. Such an imposition of the stay would not be warranted by either the facts or the law. Therefore, to the extent that the creditor will receive no payments from the debtor (namely, to the extent of 79% of the indebtedness, together with interest and other legal charges which might be due under the obligation in question) the automatic stay should be lifted.

IT IS SO ORDERED.