**In re Darrell W. HARRIS, Pamela J. Harris, Debtors.**

**Bankruptcy No. 1–81–02081.**

United States Bankruptcy Court, E. D. Tennessee.

Jan. 7, 1982.

---

Mark J. Mayfield, Chattanooga, Tenn., for creditor, Fort Oglethorpe State Bank.

Robert J. Harriss, Rossville, Ga., for debtors.

MEMORANDUM

RALPH H. KELLEY, Bankruptcy Judge.

In this chapter 13 case, a creditor, Ft. Oglethorpe State Bank, has raised several questions. In this opinion the court will deal only with the questions which arise under 11 U.S.C. § 1301.[1]

The creditor filed a claim for a balance which is subject to change with addition of late charges and interest on payments not made. The creditor also included an attorney fee of 15 percent. The note to the creditor is signed by Mr. Harris, one of the debtors in this case, and co-signed by a family friend, Joe Lewis Puryear.

In the chapter 13 plan debtors propose to pay the creditor in "full plus interest after maturity."

The creditor filed a "Request For Permission to Pursue Co-Maker." The debtors seek to have the "request" dismissed because: (1) it is not filed as an adversary proceeding pursuant to the Rules of Bankruptcy Procedure, and (2) the debtor proposes to pay the claim in full and creditor will suffer no irreparable harm.

The court will first consider the procedural question. The Rules of Bankruptcy Procedure govern the procedural aspects of most litigation within the jurisdiction of the United States Bankruptcy Courts, just as the Federal Rules of Civil Procedure govern the procedural aspects of most litigation in the United States District Courts.

Bankruptcy Rule 701 provides:

"The rules of this Part VII govern any proceeding instituted by a party before a

---

1. § 1301. Stay of action against codebtor.

(a) Except as provided in subsections (b) and (c) of this section, after the order for relief under this chapter, a creditor may not act, or commence or continue any civil action, to collect all or any part of a consumer debt of the debtor from any individual that is liable on such debt with the debtor, or that secured such debt, unless—

(1) such individual became liable on or secured such debt in the ordinary course of such individual's business; or

(2) the case is closed, dismissed, or converted to a case under chapter 7 or 11 of this title.

(b) A creditor may present a negotiable instrument, and may give notice of dishonor of such an instrument.

(c) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided by subsection (a) of this section with respect to a creditor, to the extent that—

(1) as between the debtor and the individual protected under subsection (a) of this section, such individual received the consideration for the claim held by such creditor;

(2) the plan filed by the debtor proposes not to pay such claim; or

(3) such creditor's interest would be irreparably harmed by such stay.

bankruptcy judge to (1) recover money or property, other than a proceeding under Rule 220 or Rule 604, (2) determine the validity, priority, or extent of a lien or other interest in property, (3) sell property free of a lien or other interest for which the holder can be compelled to take a money satisfaction, (4) object to or revoke a discharge, (5) obtain an injunction, (6) *obtain relief from a stay* as provided in Rule 401 or 601, or (7) determine the dischargeability of a debt. Such a proceeding shall be known as an adversary proceeding." (emphasis added)

Some matters that are adversarial may not be conducted as "adversary proceedings". Bankruptcy Rule 914. However, the rules provide that to "obtain relief from a stay", the party seeking relief must file an "adversary proceeding." Rule 701.

Rule 703 provides:

An adversary proceeding is commenced by filing a complaint with the court.

The procedures contemplated under Part VII of the Rules of Bankruptcy Procedure are orderly and convenient. The creditor in a complaint may name the codebtor as a party defendant and get complete relief in one lawsuit in one court. Lifting of the stay alone is not complete relief. The creditor may be forced to file another lawsuit against the codebtor.[2]

The Rules of Bankruptcy Procedure continue to apply to cases under Title 11 "to the extent not inconsistent" with the new Bankruptcy Code or "until such rules are repealed or superseded" by new rules. Pub.L. 95–598, Title IV, Transition, Sec. 405(d).

The procedural question concerns the language of 11 U.S.C. § 1301, which speaks in terms of "request". Subparagraph (c) states "on request of a party in interest" the court shall proceed to hear and grant relief. The meaning of the word "request" has been the subject of litigation.

In two decisions, the issue was dealt with directly. Each court, one in Virginia and the other in Georgia, held that a request for relief from an automatic stay under 11 U.S.C. § 1301 must be commenced by the filing of an adversary proceeding. *In re Willis*, 2 B.R. 643, 1 C.B.C.2d 660 (Bkrtcy. W.D.Va.1980); *In re Northwest Rec. Activities, Inc.*, 8 B.R. 5 (Bkrtcy. N.D.Ga.1980).

The leading authority on bankruptcy law is in agreement with the two decisions. The procedure for seeking relief from a stay is outlined in 2 Collier on Bankruptcy ¶ 362.08 at 263–52 (15th ed. 1981) as follows:

The existing Rules of Bankruptcy Procedure remain in effect to the extent not inconsistent with the Code until replaced by new rules. The word "request" is used to denote the pleading which initiates a proceeding seeking relief from the automatic stay. No position is taken in the Code on the question of whether the request should be denominated as a complaint, motion, application or some other form of pleading. Accordingly relief from the stay will, until new rules are promulgated, be sought by filing a complaint with the bankruptcy court.

The legislative history is clear that the matter of procedure will be left to the rules. Pending the adoption of new rules, Part VII of the existing Rules of Bankruptcy Procedure will continue to apply to stay litigation, thus requiring the party seeking relief to file a complaint initiating an adversary proceeding.[3]

**2.** "Many courts require the codebtors to be joined in any complaint to lift the stay, in which cases the creditor might as well seek a judgment on the debt in the Bankruptcy Court complaint. This is simpler than suing to lift the stay, then filing a collection suit in state court. Any bankruptcy court requiring that the codebtors be joined surely would agree to exercise jurisdiction over the entire matter. Form # 17 in Appendix F is a combination complaint designed to lift the stay and to obtain a person-al judgment against the codebtor." W. Mapother, *Creditors and the New Bankruptcy Code*, 123 (3d ed. 1981).

**3.** The Advisory Committee on Bankruptcy Rules of the Judicial Conference of the United States has distributed to each bankruptcy court Suggested Interim Bankruptcy Rules with the recommendation that they be adopted as local rules of court pending the promulgation of new bankruptcy rules. The suggested rules were

All across the United States it appears that "requests" for relief from the automatic stay of 11 U.S.C. § 1301 are generally filed as adversary proceedings. This was true in the following cases: *International Harvester Emp. Credit Union v. Daniel*, 13 B.R. 555 (Bkrtcy. S.D.Ohio 1981); *In re Norman*, 13 B.R. 894, 4 C.B.C.2d 1573 (Bkrtcy. W.D.Mo.1981); *In re Grigsby*, 13 B.R. 409, 4 C.B.C.2d 1463 (Bkrtcy. S.D.Ohio 1981); *In re Johnson*, 12 B.R. 894, 4 C.B. C.2d 1181 (Bkrtcy. D.Me.1981); *In re Leyba*, 12 B.R. 773, 7 B.C.D. 1111, 4 C.B.C.2d 1176 (Bkrtcy. D.Colo.1981); *In re Holmes*, 9 B.R. 454, 4 C.B.C.2d 259 (Bkrtcy. D.D.C. 1981); *In re DiDomizio*, 11 B.R. 357, 7 B.C.D. 883 (Bkrtcy. D.Conn.1981); *In re Rondeau*, 9 B.R. 403, 7 B.C.D. 748 (Bkrtcy. E.D.Pa.1981); *In re Weaver*, 8 B.R. 803 (Bkrtcy. S.D.Ohio 1981); *In re Betts*, 8 B.R. 799 (Bkrtcy. S.D.Ohio 1981); *In re Matula*, 7 B.R. 941 (Bkrtcy. E.D.Va.1981); *In re Brahm*, 7 B.R. 253, 3 C.B.C.2d 463 (Bkrtcy. S.D.Ohio 1980); *In re Leger*, 4 B.R. 718, 6 B.C.D. 1186 (Bkrtcy. W.D.La.1980); *In re Burton*, 4 B.R. 608, 6 B.C.D. 534, 2 C.B.C.2d 577 (Bkrtcy. W.D.La.1980).

 The automatic stay is a fundamental debtor protection. Before enactment of the new Code, the automatic stay was provided by the Rules of Bankruptcy Procedure. In order to improve the opportunity for debtor rehabilitation Congress elevated the protection and made it a part of the statute. Both the codebtor stay and the "automatic stay" of 11 U.S.C. § 362, are invoked immediately upon the filing of a petition. A debtor is not obligated to seek such stay from the court. The burden is upon those seeking removal to request relief from the stay.

 The Rules of Bankruptcy Procedure have always provided that any proceeding instituted to obtain relief from a "stay" which was provided by the Rules, be an adversary proceeding. In the opinion of the court relief from a statutory stay should require a proceeding with no less formality

than an adversary proceeding. Essential parties must be properly joined; service of process is made by summons. The pleadings are governed by Part VII of the Bankruptcy Rules and are listed in Rule 7(a) of the Federal Rules of Civil Procedure.

As noted in 5 Collier on Bankruptcy ¶ 1301.01 at 1301–2—1301–3 (15th ed. 1981):

Section 1301 improvises a unique automatic stay applicable only in chapter 13 cases. The automatic stay of actions against codebtors represents a major achievement of Public Law No. 95–598. It was intended primarily for the protection of the principal debtor proceeding under chapter 13, by insulating that individual from the indirect pressures exerted by creditors on friends, relatives, and fellow employees of the chapter 13 debtor. The codebtor stay operates to delay collection efforts against individuals close to the debtor who have obligated themselves on debts incurred by and for the benefit of the chapter 13 debtor.

Upon the entry of the order for relief under chapter 13, the codebtor stay automatically prohibits any act or civil action to collect any "consumer debt" from an individual liable with the chapter 13 debtor, or against an individual who has secured the debt, . . . Congress was informed that many Chapter XIII plans failed or were never filed due to the indirect pressures exerted on the principal Chapter XIII debtor through codebtors against whom creditors remain free to proceed.

The Congress found that the former Chapter XIII statute, which was added by amendment to the Bankruptcy Act of 1898, was seriously defective for several reasons, including failure to protect codebtors who were usually inexperienced relatives or co-workers. There was no restraint on collection efforts against codebtors while a debtor was paying the same debt in his chapter XIII.

adopted and are in effect in this district. Rule 4001 does not change the procedure, but con-

templates that a complaint must be filed.

This influenced Congress to enact 11 U.S.C. § 1301. It was intended to encourage the filing of chapter 13 cases in preference to straight bankruptcy. Congress provided no codebtor stay under chapter 7 or 11.

As noted in Bankruptcy Service, Lawyers Edition, § 45:9:

> Under 11 USCS § 1301, a new provision, creditors are prohibited from moving against certain codebtors of the debtor, that is, one who has cosigned a note with the debtor. (H.Rept.No.95–595, p. 121, Bkr-L Ed, Legislative History § 82:4)

> 11 USCS § 1301 is designed to protect a debtor operating under a Chapter 13 individual repayment plan case by insulating him from indirect pressure from his creditors exerted through friends or relatives that may have cosigned an obligation of the debtor. The protection is limited, however, to ensure that the creditor involved does not lose the benefit of the bargain he made for a cosigner. He is entitled to full compensation, including any interest, fees, and costs provided for by the agreement under which the debtor obtained his loan. The creditor is simply required to share with other creditors to the extent that the debtor will repay him under the Chapter 13 plan. The creditor is delayed, but his substantive rights are not affected. (H.Rept.No.95–595, p. 426, Bkr-L Ed, Legislative History § 82:21)

The background and history leading to the enactment of Section 1301 was discussed in a recent case decided by the Bankruptcy Court in the Western District of Virginia. The court commented:

> "Wage earner proceedings" administered under the Bankruptcy Act of 1938, granted to a Debtor little relief where his co-makers, sureties or guarantors were being sought by creditors of the Debtor. To effect a remedy for debtors under Chapter 13 in this field, the Congress saw fit in their wisdom to specifically enact a provision accommodating this vexing problem which heretofore had confronted debtors in "wage earner proceedings."

In doing so, the Congress provided in 11 U.S.C. 1301, *supra*, protection for the debtor and a remedy to creditors whose debts had secondary liability as provided therein. The narrow provisions of 11 U.S.C. 1301, *supra*, contain the remedy available to creditors, and in such narrow terms this Court finds an intent to limit this remedy to the precise provisions of the Section. The dignity accorded this specific Section by the Congress in its wisdom and efforts to provide rehabilitation to financially strapped debtors shows an intent, by the Congress, to specifically legislate the standard. Prior to the enactment of the United States Bankruptcy Code which became effective October 1, 1979, and specifically Section 11 U.S.C. 1301, *supra*, the success or failure of the rehabilitative process in a "wage earner plan" depended, for the most part, upon what accommodation the Debtor could make with his or her creditors which would protect the comaker.

*In re Willis*, 2 B.R. 643, 645, 1 C.B.C.2d 660, 662. (Bkrtcy. W.D.Va.1980).

Did Congress provide a fundamental protection to a debtor, and then intend to allow an informal procedure to take it away? Surely, that was not the intent of Congress.

This creditor's real objection to filing a complaint is that it requires a filing fee of $60. This issue was considered in *In re Leyba*, 12 B.R. 773, 7 B.C.D. 1111, 4 C.B.C.2d 1176 (Bkrtcy.D.Colo.1981). The creditor argued that the filing fee was "economically prejudicial" and "violative of due process."

In a well reasoned opinion the court in *Leyba* concluded:

> The imposition of a filing fee has been held to be rationally related to the legitimate government objective of offsetting some of the costs of operating the court system. *Ortwein v. Schwab*, 410 U.S. 656, 93 S.Ct. 1172 [35 L.Ed.2d 572] (1973); *Manes v. Goldin*, [423 U.S. 1068, 96 S.Ct. 851, 47 L.Ed.2d 80] *supra; United States v. Kras*, [409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626] *supra*. Plaintiffs have not challenged the rationality or effective-

ness of the filing fee in relation to this legitimate objective. I find that the fee does meet the test of rational justification. Having passed that threshold, it must be upheld.

12 B.R. at 776, 7 B.C.D. at 1113, 4 C.B. C.2d at 1181.

■ It follows that the "request" of Ft. Oglethorpe State Bank for permission to pursue the comaker should be denied without prejudice because it was not filed as an adversary proceeding.

In order to dispose of the "request" on its merit, the court will consider this an adversary proceeding. The filing fee of $60 will be adjudged against the creditor.

As noted earlier in this opinion the debtors propose to pay the bank in full, including post petition interest. Despite this, the creditor argues that "the stay should be removed to the extent of permitting collection from the co-debtor of the balance of each payment not paid by the trustee as each payment comes due." It is creditor's argument that relief be granted from the stay to the extent that

the plan filed by the debtor proposes not to pay such claim. § 1301(c)(2).

In other words, the creditor argues each payment as it comes due and is not paid would entitle it to relief under section 1301(c)(2).

In a number of decided cases courts have granted relief from the stay to the extent that the debtor does not propose to pay under the plan.

*In re Johnson,* (W.D.N.Y.1980); 6 B.C.D. 12;—Debtor proposed to pay 25 percent of claim in the plan. Court granted relief for the creditor to proceed against codebtor for 75 percent.

*In re DiDomizio,* supra—Debtor did not propose to pay post-petition interest. Court granted relief for the creditor to proceed against codebtor for post-petition interest.

*In re Grigsby,* supra—Debtor did not propose to pay "full payment of principal and interest". Court stated "if the Debtor proposes not to pay a portion of the

debt under his Chapter 13 plan the stay is lifted to that extent. The creditor is protected to the full amount of his claim including post-petition interest." The court allowed debtor two weeks to modify his plan "to provide for payment in full . . ."

*In re Holmes,* supra—Debtor proposed to pay 21 percent of claim in the plan over a period of 4 years and debtor further promised to reaffirm the balance upon completion of the plan. Court granted relief for creditor to proceed against codebtors for 79 percent plus interest.

*In re Johnson* (Me.), supra—Debtor proposed to pay 20 percent of claim. Court granted relief for the creditor to proceed against codebtor for 80 percent.

*In re Leger,* supra—Debtor proposed to pay claim in full except $671.42 in post-petition interest. Court granted relief for creditor to proceed against codebtor for $671.42 which debtor did not propose to pay under his plan.

*In re Matula,* supra—Debtor proposed to pay 20 percent of claim. Court granted relief for the creditor to proceed against codebtor for 80 percent.

*In re Rondeau,* supra—Debtor proposed to pay 30 percent of claim in the plan. Court granted relief for the creditor to proceed against codebtor for 70 percent.

In two cases the court did not grant relief from the stay even though the debtor proposed not to pay the full amount under the plan. In the case of *In re Weaver,* above, debtor proposed to pay 71 percent of creditor's claim. In the case of *In re Betts,* above, the debtor proposed to pay 20 percent of creditor's claim. In each case debtors included a provision in their plans that creditors agreed not to pursue codebtors. The court held that each plan was confirmed and binds creditors. Under the Bankruptcy Act of 1898 this practice was approved. *Schraer v. G.A.C. Finance Corporation,* 408 F.2d 891 (6th Cir. 1969).

The court will consider what portion of creditor's claim debtor proposes "not to pay." The plan together with representations in open court make it clear that debtor

proposes to pay the entire debt. This may pose an administrative and accounting problem for the trustee. At some point the creditor may wish to file an amended proof of claim showing late charges and additional interest. In this way the creditor will be assured of being paid in full. This is clearly the debtors' intention under the chapter 13 plan.

■ Creditor bank asserts that failure to make each payment as it becomes due would entitle it to relief from the automatic stay. The court believes this an inaccurate interpretation both in reference to legislative history and the clear language of § 1301.

Indeed, an automatic stay which would allow a creditor to collect each payment as it becomes due would not be a stay. The creditor would collect each payment as it "becomes due" just as it could before. Surely, this was not the intent of Congress.

■ Legislative history indicates that the purpose of the automatic stay is to bar creditors from taking post-petition steps to enforce claims against codebtors.[4] This relieves pressure on the debtor. His friends and relatives who have cosigned for him are protected. The stay, however, is only a delay. It does not change the cosigner's liability.[5] The lender must wait for full payment under the plan along with other creditors. Section 1301(c)(2) does not permit lifting the stay so that a creditor will receive each payment on the date it is due under an original note.

■ Justification for relief under § 1301(c)(2) may be granted only when the debtor proposes not to pay the entire amount claimed. The statute and legislative history refer to payments under the plan, not those that would have been due normally under the note. To hold otherwise would nullify an extension plan under chapter 13 and would hold the debtor to the original note payment.

The court holds that creditor bank is not entitled to relief from the stay as each payment comes due to the extent not paid by the trustee.

The court will consider next creditor's request for relief under section 1301(c)(3) because its interest would be irreparably harmed unless it receives relief from the stay. The creditor in this case may have to wait many months before it receives payment in full on its claim. The question presented is whether delayed payment amounts to irreparable harm to the interest of the creditor.

In its brief the creditor points to the harm done when debt must be charged as a "bad" debt:

When the bank is required to charge off an account, which it will in this case if payments are not received, its bad debt size is increased. Funds available for loaning are decreased. Its income is reduced due to the charge off, thereby adversely affecting its financial statement; its income is reduced, the value of its stock is affected. Its ability to command deposits is reduced. This irreparably harms this creditor.

■ The plan proposes to pay creditor in full. The plan may fail. For a variety of reasons, the creditor may be vulnerable to eventual non-payment. But the automatic stay may be lifted under § 1301(c)(3) *only* when irreparable harm is shown.

Creditor relies on *In re Holmes*, above, where a four year plan proposed to pay 21 percent with a promise that debtor would reaffirm. The court modified the stay and allowed the creditor to proceed against codebtors for 79 percent. This court does not find *Holmes* supportive of creditor's argument.

The debtors' plan proposes full payment, and the codebtor remains obligated should debtor's plan fail. Creditor emphasizes the

---

**4.** See H.R.Rep.No.95–595, 95th Cong., 1st Sess. 121–122 (1977), U.S.Code Cong. & Admin. News 1978, p. 5787.

**5.** "The protection is limited, however, to ensure that the creditor involved does not lose the

benefit of the bargain he made for a cosigner." H.R.Rep.No.95–595, 95th Cong., 1st Sess. 426 (1976), U.S.Code Cong. & Admin.News 1978, p. 6381.

effect in late payment on the bad debt account of the bank. This confuses the meaning of irreparable harm.

 Of course, late payments are undesirable from the bank's standpoint, but late payments alone do not rise to the status of irreparable harm. The plan provides to pay creditor in full; the court's conditional order of confirmation found that:

(6) Debtor appears to be able to make all payments under the Plan and to comply with the Plan.

No rights to eventual full satisfaction of the claim have been shown in jeopardy. If, at some time, creditor can prove a change of circumstances to the extent that it may suffer irreparable harm, the stay may be removed or modified upon notice and hearing.

### Burden of Proof

 The court now considers the issue of which party should bear the burden of proof on creditor's complaint for relief from the section 1301 automatic stay. Creditor urges that failure to make full payments when due should give rise to a presumption of irreparable harm in favor of creditor. Unlike section 362(g), which makes clear upon whom the burden of proof must fall, no indication is given as to the burdened party under section 1301(c)(3). The proper test in determining who has the burden of proof is which party (creditor or debtor) will fail if no proof is offered to the facts as alleged for relief. The bank alleges irreparable harm. The court believes it is necessary, then, for the bank to persuade the court in support of this position. The bank needs to make a showing of irreparable harm. There is no presumption that a chapter 13 plan which proposes to pay creditor in full causes irreparable harm.

On the issue of which party should bear the burden of proof on the creditor's complaint for relief from the automatic stay of Section 1301, a reported decision holds that the common law of evidence places the burden on the creditor, i.e., the party alleging an essential injustice. *In re Burton*, 4 B.R. 608, 6 B.C.D. 534, 2 C.B.C.2d 577 (Bkrtcy. W.D.Va.1980).

After a review of the common law and 9 Wigmore on Evidence § 3485, "Burden of Proof", the court concludes as follows:

Wigmore notes that whether in the market, the home, or the legal forum, it is the desire to have action taken which is important. *Wigmore, supra.* In the affairs of life as in the court of law, the penalty for not sustaining the burden of proof—*i.e.* by nonpersuasion of the fact in issue—is that the party to be influenced (the court) will not be in a position to take the desired action to which his persuasion is a prerequisite.

It is sometimes urged that the burden falls upon the one whose case the fact in issue is essential. Certainly, the Bank is in the position of having to prove the essential facts of its irreparable harm. To do otherwise would place the unfair and inequitable burden of proof upon the defendant Debtor who should not be forced to a showing of no irreparable harm.

Another consideration suggested by Professor Wigmore is that the burden is upon the party who has the peculiar means of knowledge surrounding the fact in issue which would enable him to prove the proposition one way or the other. *Wigmore, supra.* But, as the author notes:

"This consideration, after all, merely takes its place among other considerations of fairness and experience as a most important one to be kept in mind in apportioning the burden of proof in a specific case."

It becomes then a question more of policy and fairness than a set rule or rules. On the issue of fairness, the Supreme Court in *Adams v. U.S.*, 317 U.S. 269, 281 [63 S.Ct. 236, 242, 87 L.Ed. 268] (1942) stated:

"It is not asking too much that the burden of showing essential unfairness be sustained by him who claims such injustice and seeks to have the result set aside, and that it be sustained not as a matter of speculation but as a demonstrable reality." Quoted with approval in *Albert v. Commonwealth*, 181 Va. 894, 27 S.E.2d 177 (1943).

We think this rule should apply in the instant case even though Albert was a criminal case; the theory is the same. The Bank wants to show that it is unfair if the codebtor stay pursuant to 11 U.S.C. § 1301 is allowed to remain in effect, thereby foreclosing the Bank's rights under its contract. As the claimant of an essential injustice, the burden of proof on the issue of irreparable harm should properly fall to the plaintiff, the Bank, which seeks relief from the stay.

4 B.R. 608, 6 B.C.D. at 535, 2 C.B.C.2d at 580–581.

At the hearing on the creditor's request for relief from stay, it called no witnesses. It presented no evidence. It simply relies upon the record.

The court finds that the burden of showing irreparable harm rests upon the creditor. Congress surely meant for the stay to remain in effect until a creditor by positive evidence shows irreparable harm is being caused. This has not been done.

The stay of 11 U.S.C. § 1301 against enforcement of this debt against the codebtor will remain.

This memorandum constitutes findings of fact and conclusions of law. Bankruptcy Rule 752.