**Darrell W. HARRIS and Pamela J. Harris, Debtors,**

v.

**FORT OGLETHORPE STATE BANK, Defendant.**

**No. CIV-1-82-116.**

United States District Court, E. D. Tennessee, S. D.

July 23, 1982.

Robert J. Harriss, Brown, Harriss, Hartman & Aaron, Rossville, Ga., for debtors.

Lawrence R. Ahern, Miller & Martin, Chattanooga, Tenn., for defendant.

## MEMORANDUM

FRANK W. WILSON, Chief Judge.

The present action is an appeal from the January 7, 1982 decision of the Bankruptcy Court for the Eastern District of Tennessee (Court File # 18). The case arose when Darrell and Pamela Harris filed a petition and proposed plan pursuant to Chapter 13 of Title 11 of the *United States Code.* Among their listed debts was a loan with a remaining balance of $719.60 from Fort Oglethorpe State Bank, cosigned by Mr. Joe Puryear. The Bankruptcy Court denied the Bank's request for permission to sue the comaker, and by considering the request a separate adversary action, adjudged a $60.00 filing fee against the Bank.

The plan approved by the Bankruptcy Court provides that the creditor Bank's claim shall be paid in full with interest. The creditor contends, however, that as the plan does not propose to pay off its loan on time, the plan fails to pay the Bank's claim in full. In addition, the Bank contends it will suffer irreparable harm by being delayed in collecting this debt. If the Court is persuaded by either of these contentions, it would bring the Bank's claim within the language of 11 U.S.C. § 1301(c), which provides for setting aside the automatic stay of action against a comaker:

"On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided by

subsection (a) of this section with respect to a creditor, to the extent that—

\* \* \* \* \* \*

"(2) the plan filed by the debtor proposes not to pay such claim; or

"(3) such creditor's interest would be irreparably harmed by such stay."

The purpose of the automatic stay against comakers is explained in the legislative history of Section 1301.

"Creditors are prohibited from moving against codebtors of the debtor, that is, one who has cosigned a note with the debtor.

"The provision ... is designed to protect a chapter 13 debtor from indirect pressure from a creditor exerted through his friends or relatives, to favor or prefer that creditor. A creditor is often able to obtain a cosigner on a loan when the loan is extended. The Federal Trade Commission, in its investigation of the consumer finance industry, and the Bankruptcy Commission found, that most often the cosigner is not aware of the consequences of his acting as a cosigner for the debtor. The contract is most frequently a contract of adhesion between the lender and the debtor.

"A creditor with a cosigner on a note is often able to use the threat of collection from the cosigner as a leverage to obtain preferential treatment from the debtor. Most often, cosigners are relatives, friends, or co-workers of the debtor, who have signed as a favor to the debtor, without a full understanding of their ultimate liability on the debt. The moral pressure brought to bear on the debtor to protect his family or friends gives the creditor a significant advantage over other creditors in a way that is not related to legitimate financial considerations.

"If the debtor falls on hard financial times, and seeks bankruptcy relief, the creditor is able to move against the codebtor. The debtor, not wishing to see his friends or relatives subjected to having to pay the debt, will make an agreement with the creditor to reaffirm the

debt and pay it himself. This practice makes chapter XIII plans difficult to consummate, because the debtor has the obligation to the creditor in addition to his other obligations under the plan.

"The automatic stay of creditor action against co-debtors will relieve the debtor from indirect pressure to pay certain creditors in full immediately, in spite of the pendency of the supposed protection of the chapter 13 case. It will require a creditor with a cosigner to share equally in time with other creditors, and to wait for payment as all other creditors are required to do when a debtor seeks the protection of the bankruptcy laws. Thus, the stay will facilitate the use of chapter 13 individual repayment plans.

\*　　\*　　\*　　\*　　\*　　\*

"The section governing the stay also provides for relief from the stay in certain circumstances, in order to protect the creditor's rights. If the debtor proposes not to pay a portion of the debt under his chapter 13 individual repayment plan, then the stay is lifted to that extent. The creditor is protected to the full amount of his claim, including postpetition interests, costs, and attorney's fees, if the contract so provides. Thus, if the debtor proposes to pay only $70 of a $100 debt on which there is a cosigner, the creditor must wait to receive the $70 from the debtor under the plan, but may move against the codebtor for the remaining $30 and for any additional interest fees, or costs for which the debtor is liable. The stay does not prevent the creditor from receiving full payment, including any costs and interest, of his claim. It does not affect his substantive rights. *It merely requires him to wait along with all other creditors for that portion of the debt that the debtor will repay under the plan.* (emphasis added)

\*　　\*　　\*　　\*　　\*　　\*

"The creditor is delay but his substantive rights are not affected."
H.R.Rep.No.59–595, 95th Cong., 1st Sess. 121, 122, n. 426 *reprinted in* [1978] 5 U.S. Code Cong. & Ad.News 2d Sess. 5963, 6082–3, 6381.

The Bank's argument that the automatic stay provision should be terminated by the debtors' failure to pay at the time payments are due is undercut by the above legislative history. The creditor is fully protected, but he must wait for that portion of the debt to be paid under the plan. Here as the entire debt plus interest is to be paid, the decision of the Bankruptcy Court not to set aside the stay under 11 U.S.C. § 1301(c)(2) will be affirmed.

It is true that the Senate Judiciary Committee Report contains a sentence which may be read to conflict with the above interpretation:

"... If a debtor defaults on scheduled payments under the plan, then the codebtor would be liable for the remaining deficiency; otherwise, payments not made under the plan may never be made by the codebtor. *The obligation of the codebtor to make the creditor whole at the time payments are due remains.*" (Emphasis added)
S.Rep.No.95–989, 95th Cong., 2d Sess. 138 *reprinted in* [1978] 5 U.S. Code Cong. & Ad. News 2d Sess. 5787, 5924.

However, the Court believes the "payments" mentioned in the last quoted sentence refer to the debtor's payments under the plan.

The Bank then contends that the automatic stay against collection from the comaker will irreparably harm its interest. The Bank relies heavily upon the case of *In re Holmes*, 9 B.R. 454, 4 C.B.C.2d 259 (Bkrtcy.D.C.1981), where the plan proposed to pay 21% of the unsecured claim over four years and then to reaffirm the remaining 79%. That court allowed the 79% not to be paid under the plan to be collected from comaker, stating:

"To allow a co-maker on a note to absolve themselves from payment on that note for four years would in effect nullify the purpose of having a co-maker on a note...."

The Bank argues that delay in seeking payment on the note substantially increases the risk of uncollectibility.

■ This Court does not believe that delay in payment under a plan necessarily comes within the definition of "irreparable harm" under 11 U.S.C. § 1301(c)(3). The *Holmes* decision can be distinguished as that court allowed collection from the co-maker only to the extent that the plan proposed to reaffirm rather than pay the debt. The legislative history sets forth numerous types of irreparable harm, and mere delay under the plan is not among them:

> "The stay is also lifted if continuance of the stay would result in irreparable injury to the creditor, such as in cases where the codebtor is deteriorating financially, by loss of his job, or where the codebtor is about the leave the jurisdiction, and would no longer be available to make good on the debt if the debtor were unable to complete payments under the plan ...."

> \* \* \* \* \* \*

> "... [T]he court must grant relief to the extent that the creditor's interest would be irreparably harmed by the stay, for example, where the codebtor filed bankruptcy himself, or threatened to leave the locale, or lost his job."

H.R.Rep.No.95–595, 95th Cong. 1st Sess. 122 & 426 *reprinted in* [1978] 5 U.S.Code Cong. & Ad.News 2d Sess. 5963, 6083 & 6382.

> "... [I]f there is reasonable cause to believe that property is about to be disposed of by the codebtor which could be used to satisfy his obligation to the creditor, the court should lift the stay to allow the creditor to perfect his rights against such property. Likewise, if property is subject to rapid depreciation or decrease in value the stay should be lifted to allow the creditor to protect his rights to reach such property. Otherwise, the creditor's interest would be irreparably harmed by such stay. Property which could be used to satisfy the claim could be disposed of or encumbered and placed beyond the reach of the creditor. The creditor should be allowed to protect his rights to reach property which could satisfy his claim and prevent its erosion in value, disposal, or encumbrance."

S.Rep.No.95–989, 95th Cong., 2d Sess. 139 *reprinted in* [1978] 5 U.S.Code Cong. & Ad.News 2d Sess. 5787, 5925.

Accordingly, the Court believes the decision of the Bankruptcy Court in refusing to lift the automatic stay under 11 U.S.C. § 1301(c)(3) should be affirmed.

The final issue is whether the proper method for seeking relief from an automatic stay is by the filing of a separate adversary action, or by motion in the original bankruptcy proceeding. 11 U.S.C. § 1301(c) speaks in terms of "On request of a party in interest and after notice and a hearing, ..." The significance of the requirement of an adversary proceeding, as the Bankruptcy Court determined, is an additional $60.00 filing fee. The Bankruptcy Rules do not specifically deal with the method of seeking relief from a § 1301 stay.

The Rules of Bankruptcy Procedure continue to apply to cases under Title 11 "to the extent not inconsistent" with the new Bankruptcy Code or "until such rules are repealed or superceded" by new rules. Pub.L. 95–598, Title IV, Transition, § 405(d).

Relief from stays under Rule 13–401, Rule 401, or Rule 601 is by complaint, however none of these Rules apply to comaker stays. Section 1301 is a new provision and neither the Bankruptcy Rules nor the Interim Bankruptcy Rules are specifically applicable. Accordingly, the question becomes whether relief from a comaker stay should be by complaint or whether relief should be by motion as a matter "not otherwise governed" by the Bankruptcy Rules.

In this regard, Rule 914 states:

> "In a contested matter in a bankruptcy case not otherwise governed by these rules, relief shall be requested by motion, and reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought .... The motion shall be served in the manner provided for service of a summons, complaint, and notice by Rule 704 ...."

The opinion of the Bankruptcy Court notes many cases in which "requests" for relief from the codebtor stay were filed by complaint as adversary proceedings. This is surely an appropriate manner in which to file such a request. The Bankruptcy Court further relied upon the reasoning in *In re Willis*, 2 B.R. 643 (Bkrtcy.W.D.Va.1980) where that court held that the dignity Congress imported to § 1301 required a separate adversary proceeding rather than raising the request by motion. The Bankruptcy Court below concluded Congress did not intend to allow an informal procedure to take away the fundamental protection offered by § 1301.

 This Court cannot agree that allowing the "request" for relief of the automatic stay to proceed by motion would be such an informal procedure that it would defeat the intent of Congress. In the present case for example, the Bankruptcy Court did not pursue any more formal procedure but merely stated:

> "In order to dispose of the 'request' on its merit, the court will consider this an adversary proceeding. The filing fee of $60 will be adjudged against the creditor." (Court File # 18 at 10)

This is an exaltation of form over substance. Such formal distinctions should be minimized and eliminated if possible. In Bankruptcy Rule 707's adoption of F.R. Civ.P. 7(a) is the realization that the form of the pleadings is not an end in itself. *Wright & Miller* § 1182.

Proceeding by motion under Rule 914 requires that the motion be served in the same manner as a summons, complaint and notice. 11 U.S.C. § 1301(c) provides for notice and a hearing before the court may grant relief from a codebtor stay. These requirements assure procedural formality adequate to protect the important interests of § 1301. In the instant case, where the debtor has sought only a declaration of the meaning of "irreparable harm" and a plan which "proposes not to pay" a debt, as those phrases are used in § 1301(c)(2) & (3), disposition by motion is particularly appropriate.

Accordingly, an order will enter affirming the Bankruptcy Court's refusal to grant relief from the comaker stay, but reversing its assessment of $60.00 costs against the Bank.